THOMAS W. McDONALD, Plaintiff in Error, *v.* CARTER T. WILKIE et al., Defendants in Error.

ERROR TO JEFFERSON.

A demurrer to a rejoinder opens the whole record, and will be carried back to the first substantial defect in the pleadings.

A constable is protected in the execution of process issued by a justice of the peace, which shows upon its face that the justice had jurisdiction of the subject-matter, and nothing appears to apprise him that the justice had not jurisdiction of the person.

If a constable have notice of an excess or want of jurisdiction in a justice to issue the process, he would render himself liable by acting under it.

A judgment which is joint in favor of several defendants, and erroneous as to one, will be reversed as to all.

Except in cases of judgments in actions of trespass or trover, a justice of the peace cannot issue an execution against the body of a defendant before an execution against the property has been issued and returned unsatisfied.

McDONALD brought an action of trespass for an assault, battery, and false imprisonment against the defendants in error. To which they severally pleaded the general issue; and also specially:

That on the 18th April, 1850, defendant Wilkie recovered a judgment for $99.99 and costs against said plaintiff, before said Lyonberger, a justice duly authorized and having jurisdiction, &c. in an action of debt; that Wilkie made oath before said justice, that he verily believed plaintiff to be able to pay said judgment, and that he withholds his money and secretes his property from the officer, so that the debt cannot be levied, — said justice having power to administer such oath, — and demanded an execution against the body of said plaintiff; which are the supposed trespasses according to Wilkie's plea.

Lyonberger's plea also averred, that he thereupon issued a *capias* against the body of said plaintiff, and delivered it to said Lowry as a constable.

Lowry's plea contains the additional averment, that said writ commanded him to make $99.99 of the goods and chattels of said plaintiff, and on default thereof that he arrest and commit said plaintiff to the jail of said county, &c.; and that plaintiff, failing to surrender property, he gently laid his hands upon plaintiff and imprisoned him, as he lawfully might.

Separate demurrers to these pleas were overruled.

Thereupon the plaintiff replied severally and specially, that before the rendition of said judgment on the 8th April, 1850, Wilkie made oath before said Lyonberger, and on 9th April aforesaid caused an attachment in said suit to be issued by said Lyonberger, he having authority, &c., against as much of the personal property of said plaintiff as would be of sufficient value to satisfy said Wilkie in the sum of $99.99; and such estate so attached, to secure, &c.

That said writ was put into the hands of Lowry, a constable, and on 10th April he took a roan mare and brown horse, each worth $75, bridle, saddle, and sheepskin, worth $25, and on 15th April took a trunk worth $25. All these were the property of plaintiff and of the value of $200, and enough to pay said judgment, and all which Lowry carried away, and which remained in his hands undisposed of in any way at the time of the making the oath by said Wilkie, the issuing of the *capias* by said Lyonberger, and of the arrest and imprisonment by said Lowry. And that at and before these times no execution had been issued against said plaintiff's goods, or order of sale of said property so levied on.

Demurrers to these replications were overruled.

Defendants severally rejoined, that at the time John Lowry had not taken, and then had in his possession, under said attachment, goods, &c. of plaintiff sufficient to pay said debt.

The plaintiff demurred to each rejoinder, and, as the bill of exceptions shows, at the same time moved for default for so much as is unanswered by pleas and the rejoinders, which the court refused, and also overruled the demurrers, and rendered judgment thereupon for costs against the plaintiff, Denning, Judge, presiding, at May term, 1851, of Jefferson Circuit Court.

W. B. Scates, for plaintiff in error.

If a plea do not fully answer all that it purports to answer in the introductory part, it is bad. 1 Chit. Pl. 523, 524, 625.

And it is proper, upon filing a demurrer or replication to such a pleading, to ask default or judgment for the unanswered part of the declaration or other pleading. 1 Chit. Pl. 523, 625.

A party is not entitled to final process of *capias* until he make oath that the debtor refuses to surrender his property. Rev. St. 1845, p. 282, § 1.

Executions are not to issue on judgments of justices of the peace under twenty days, except plaintiff make oath that he believes the debt will be lost, when it may issue immediately and be levied, but no sale can be made for twenty days. Id. p. 322, § 53.

*Capias* in execution, in the first instance, is not allowed, even for fine and costs in cases of assault, assault and battery, and affrays, but a *fieri facias.* Id. p. 329, § 97.

D. Baugh, for the defendants in error,

Cited Rev. St. p. 328, § 91; 1 Chit. Pl. 182, 183, 611, 614, 618; 20 Johns. Rep. 165, 404; 2 Conn. 700; 11 Mass. 500; 2 Litt. 234; 6 Greenl. 421; 9 Conn. 141; 6 Wend. 382.

Trumbull, J. McDonald sued Wilkie, Lyonberger, and Lowry in an action of trespass *vi et armis.* The defendants pleaded separately, and the case was decided on demurrer to rejoinders, which the court overruled, and gave judgment against the plaintiff for costs.

Since the judgment in the Circuit Court, Lyonberger has deceased, whereby the suit as to him has abated, and it will be unnecessary to notice the pleas which he filed.

The demurrer to the rejoinders opens the whole record, and will be carried back to the first substantial defect in the pleadings.

The special plea filed by Wilkie states, in substance, that before the assaulting, imprisoning, &c. of the plaintiff, as alleged in his declaration, he had obtained a judgment against him for ninety-nine dollars and ninety-nine cents, before Lyonberger, a duly qualified justice of the peace having jurisdiction to enter such judgment; that he made oath before said justice that he verily believed McDonald to be able to pay the judgment, but that he withheld his money and secreted his property from the officer, so that the debt could not be levied; and thereupon he demanded an execution against the body of McDonald, as he

lawfully might for the causes aforesaid, which was the supposed trespass complained of. This plea is clearly bad. It does not even allege that a *ca. sa.* ever issued; and if it did, there is no averment that McDonald was arrested and imprisoned under it. The fact that Wilkie made oath before a justice of the peace and demanded an execution against the body of McDonald, was surely no justification for his assaulting him. To have made the plea good, it should have gone on to allege that the justice issued the *capias ad satisfaciendum;* that the writ was subsequently placed in the hands of an officer to execute, and that under and by virtue of it McDonald was arrested and imprisoned. The plea was no answer to the replication, and the demurrer to the rejoinder to replication should have been carried back and sustained to this plea.

The plea of Lowry justified the trespasses complained of under a writ of *ca. sa.* placed in his hands, as constable, to be executed, and we think presented, *primâ facie,* a good defence to the action, so far as he was concerned. A constable is protected in the execution of process issued by a justice of the peace, which shows upon its face that the justice had jurisdiction of the subject-matter, and nothing appears to apprise him that he had not jurisdiction also of the person. If the officer have notice of an excess or want of jurisdiction in the justice to issue the process, he would doubtless render himself liable by acting under it. Barnes *v.* Barber, 1 Gilm. 401.

If it were admitted that the *ca. sa.* was issued without authority, there is nothing in the pleadings to show that Lowry had knowledge of that fact. The replication to his plea was wholly defective. It failed to show that the pleadings in the case of the attachment had any connection with the judgment upon which the *ca. sa.* issued. For aught that appears, there may have been two actions against the plaintiff for different demands, one by attachment, and the other in the ordinary mode. It is wholly immaterial whether Lowry's rejoinder to this replication was good or not. It was certainly good enough for a bad replication, and, had a separate judgment been entered in his favor for costs, this court would have been compelled, as to him, to affirm the judgment. The judgment, however, being

joint in favor of all the defendants, and erroneous as to one, will have to be reversed as to all. A judgment, jointly entered in favor of several defendants, whether in an action upon contract or for tort, cannot be affirmed as to one and reversed as to another. Such a judgment is an entirety, and must stand or fall together. Harmon *v.* Brotherson, 1 Denio, 537; Cruikshank *v.* Gardner, 2 Hill, 333; Sheldon *v.* Quinlen, 5 Hill, 441; Gaylord *v.* Payne, 4 Conn. 190; Bac. Ab. Tit. Error, M.

As the case has to be remanded, it will be proper to express an opinion upon the right of the justice of the peace to issue an execution against the body, upon the state of facts set forth in the plea of Wilkie; which was the main point argued by counsel, and which will doubtless arise again upon an amendment of the pleadings in the court below.

The decision of this question involves a construction of the ninety-first section of the act concerning justices of the peace and constables, which is as follows: " In cases of judgment for debt, whenever the plaintiff, or his authorized agent, shall make oath, before the justice in whose office such judgment may be, *that he or she verily believes the defendant or defendants to be* able to pay such judgment, and withholds the money, or secretes his, her, or their property from the officer, so that the debt cannot be levied, it shall be lawful for the plaintiff to demand, and for the justice to issue, execution against the body of such defendant or defendants."

Under this provision of the statute, it is insisted, by the defendant's counsel, that a plaintiff, upon obtaining judgment before a justice of the peace, has the right, immediately upon making the requisite affidavit, to sue out execution against the body of the defendant, without having first had an execution issued against his goods and chattels, and returned unsatisfied. We do not so understand the law. The ninety-first section, above quoted, is but a reiteration of the first section of the act concerning insolvent debtors, (Rev. Stat. ch. 52,) which authorizes a *ca. sa.* against the body of a defendant in execution in no case, except he shall refuse to surrender his estate, goods or chattels, for the satisfaction of an execution which may have been issued against his property. These provisions of the statute

being in *pari materiâ*, are to be construed together, and, when considered in that connection, there can be no question, except in cases of judgments in actions of trespass or trover before justices of the peace, specially provided for by sec. 90, ch. 59, that an execution must first issue against the property of the defendant, before one can lawfully issue against his body. How is it possible for a defendant to *withhold or secrete his property from an officer*, as specified in the ninety-first section, when there has been no officer clothed with authority to take or seize his property?

Taken by itself, a fair construction of this provision of the statute would not justify an execution against the body in the first instance; but, when considered in connection with the provisions of the insolvent debtor's act, it is clear that a justice of the peace transcends his authority, who issues execution upon a judgment founded upon contract against the body of a defendant, before an execution has been issued and returned unsatisfied against his property.

The judgment of the Circuit Court will be reversed and the cause remanded, with directions to that court to enter a separate judgment for the defendant, Lowry, on the demurrer of plaintiff to his rejoinder, and with leave to Wilkie to plead *de novo*.

*Judgment reversed.*