## The First Presbyterian Church of Chicago Heights et al. v. Charles A. McColly.

### Gen. No. 12,361.

1. REVERSAL—*when must be as to all defendants.* If a judgment is a unit, it must, if erroneous, be reversed as to all the defendants.

2. RELIGIOUS CORPORATION—*how may be bound.* The trustees of a religious corporation organized under the incorporation act of this state are the only persons empowered to bind the corporate body legally, and in order to do this the trustees must meet as a board and take action as such. The separate and individual action of the trustees or any number of them, without holding a meeting of the board, is not binding upon the corporation and cannot of itself create a corporate liability.

3. TRESPASS—*when religious corporation not liable for.* A trespass committed by trustees of a religious corporation is not the trespass of such corporation, unless authorized by it, through its board of trustees, acting in meeting assembled.

Action of trespass. Appeal from the City Court of Chicago Heights; the Hon. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Reversed and remanded. Opinion filed April 24, 1906.

**Statement by the Court.** The First Presbyterian Church of Chicago Heights, appellant, is incorporated as a religious society under the Act of 1872. William G. Caldwell, F. M. Richardson, George S. Angus, David Wallace, M. E. Hotchkiss, E. E. Beach and H. K. Helfrick composed its board of trustees for 1904. The church was the owner of a burying ground or cemetery attached to and connected with its house of worship, in the city of Chicago Heights. The whole property was under the care and management of the board of trustees.

In January, 1904, a child of appellee was buried in a lot of the cemetery purchased by appellee. Some time in March, 1904, appellee McColly met William G. Caldwell, one of the church trustees, and said to him that he desired to exchange his lot for another lot in the cemetery and to build a vault thereon for his child. Caldwell objected to the exchange of lots. Appellee then saw McEldowney, whom he believed to be a trustee, and requested his assist-

ance in the matter, explaining that Caldwell had objected to any graves further west toward the road, and stating how the vault was to be built. A few days afterwards appellee met Caldwell and McEldowney on the street and exhibited to them a sketch of the proposed vault, and stated how he proposed to construct the vault, and Caldwell told him that if he would build it as he talked, he (Caldwell) would not object to it, if the other members of the board had no objections.

Subsequently Caldwell went with appellee to the cemetery and showed him lot 225. On the following day appellee made a contract with one Summerville to erect a vault on lot 225. Summerville excavated the earth for a foundation and filled in the excavation with concrete for the foundation and extended it about six inches above the surface of the ground. On this was laid a sandstone, and upon the sandstone was built the vault surrounded by brick work. When the contractor had built the foundation and was about to commence laying the brick, Caldwell heard of the work and going to the cemetery found the contractor was beginning to lay the brick. He notified the contractor that the vault was not being built as agreed, and that he must stop work upon it. The contractor refused to comply with his orders and went on with the work. Thereupon Caldwell notified appellee to stop the work until he could get a permit from the trustees. Appellee refused to stop the work, but proceeded to complete the vault, except putting on the top or marble shaft.

Appellee having constructed the vault as above, saw Hotchkiss, Angus and Richardson and requested each of them to attend a meeting of the board of trustees and give him a permit to remove the body to the vault. A meeting of the board was held on April 25, 1904, all the trustees being present except Hotchkiss, and a resolution was adopted appointing Helfrick a committee to procure an injunction restraining appellee from disinterring the body of his child, and to serve notice on appellee to remove the brick, etc., from the cemetery. Helfrick did nothing under the resolution.

On April 27, 1904, Caldwell and Angus, learning that appellee had gone to Chicago to procure an injunction, and acting upon the advice of an attorney at law and without the knowledge or authority of the board of trustees of the church, secured the services of appellant Orr, a contractor, and went to the cemetery, took down the vault and carried away the brick and stone of which the vault was constructed.

Thereupon appellee brought this action of trespass against appellants and others in the City Court of Chicago Heights. At the close of the plaintiff's evidence the court granted a motion to dismiss the suit as to the other defendants, and overruled separate motions in behalf of each of the appellants to instruct the jury to find the defendants not guilty. After all the evidence was introduced these motions on behalf of each defendant were renewed and overruled by the court and exceptions were properly taken. The jury returned a verdict in favor of the plaintiff, appellee, and judgment was entered thereon.

F. H. Trude and Lindhout & Lindhout, for appellants.

Craig A. Hood, for appellee.

Mr. Presiding Justice Smith delivered the opinion of the court.

The judgment shown in the record is a unit as to all of the defendants against whom it was rendered, and cannot be reversed as to one or more of them and affirmed as to the others; but if erroneous as to one, it is erroneous as to all. Street R. R. Co. v. Morrison A. & A. Co., 160 Ill. 288; 1 Chitty's Pleadings, 86; McDonald v. Wilkie, 13 Ill. 22; Jansen v. Varnum, 89 id. 100; Ragor v. Kendall, 70 id. 95; Claflin v. Dunne, 129 id. 241. If then the judgment is erroneous as to the First Presbyterian Church of Chicago Heights, it must be reversed as to all the appellants.

The evidence relied upon by appellee to fix responsibility upon the church for removing the vault constructed by him is that the church in a congregational meeting had placed

the control of the cemetery fully and entirely in the hands of the board of trustees and had authorized the trustees to give deeds to those who had purchased lots; that Caldwell was president of the board and Angus was the secretary; that Caldwell had showed lots, prepared and delivered deeds, received money for lots and deposited it with the church treasurer; that he had looked after the cemetery sometimes, because there was no one else to do it, and had permitted burials without first calling a meeting of the trustees; that Caldwell had consented to the exchange of lots, and that the vault as constructed was practically similar to the plan and sketch which appellee had exhibited to Caldwell. It is not pretended that the appellant church, or its board of trustees, acting as a board, directly or otherwise authorized the acts complained of in the declaration.

The trustees of a religious corporation organized under the incorporation act of this state are the only persons empowered to bind the corporate body legally, and in order to do this the trustees must meet as a board and take action as such. The separate and individual action of the trustees or any number of them, without holding a meeting of the board, is not binding upon the corporation, and cannot of itself create a corporate liability. Constant v. Rector, Wardens & Vestry of St. Albans Church, 4 Daly's Rep. 305; United Brethren Church of New London v. Vandusen, 37 Wis. 54; Thompson v. West, 59 Neb. 677.

The action of Caldwell and Angus in taking down and removing the brick and stone of the vault was done without any authority from the appellant, The First Presbyterian Church of Chicago Heights, of any nature or kind, and the church is not liable for the alleged trespass.

The judgment is, therefore, reversed and the cause is remanded.

*Reversed and remanded.*