THE PEOPLE *ex rel.* G. A. Shallberg, City Attorney, Appellant, *vs.* THE CENTRAL UNION TELEPHONE COMPANY, Appellee.

*Opinion filed February 20, 1908.*

1. QUO WARRANTO—*office of information is not to tender an issue of fact.* The office of an information in the nature of *quo warranto* is not to tender any issue of fact, but simply to call upon the defendant, in general terms, to show by what warrant the privilege claimed is held or exercised.

2. SAME—*it is sufficient to allege, generally, that defendant is exercising privilege without lawful authority.* An information in the nature of *quo warranto* to require the defendant to show by what authority he exercises a license, privilege or franchise which must emanate from the State may allege the usurpation in general terms, and in such case the defendant cannot traverse the information, nor is a plea of not guilty or *non usurpavit* an answer thereto.

3. SAME—*defendant to information charging usurpation in general terms must disclaim or justify.* A defendant to an information in the nature of *quo warranto* which alleges usurpation in general terms must disclaim or justify, and if he justifies the plea must not only show that he once had lawful authority to exercise the privilege, but also that he still has such authority.

4. SAME—*limits of rule that replication cannot traverse matters of inducement in the plea.* The rule that a replication to a plea of justification to an information in the nature of *quo warranto* shall not traverse matters of inducement set up in the plea should not be so extended as to prevent the formation of proper issues.

5. SAME—*effect where People take issue on traverse in plea.* Where an information in the nature of *quo warranto* alleges usurpation in general terms, and the defendant's plea alleges facts showing its right to exercise the privilege claimed, and concludes with a traverse, under the *absque hoc,* of the general charge of the information, the only issuable part of such plea is the traverse under the *absque hoc,* and if the People desire to take issue they should join in the traverse by re-affirming the usurpation, in which case the defendant must prove the facts alleged in the plea.

6. SAME—*People may set up, by replication, new matter showing invalidity of defendant's title.* An information in the nature of *quo warranto* charging usurpation in general terms need not anticipate any defense which may be made, and where the defendant justifies and pleads facts which show his apparent title, the People may, by replication, set up new matter showing the invalidity of such title.

7. SAME—*a demurrer reaches back to first defect in pleading.* Where a demurrer is filed to replications to the pleas to an information in *quo warranto,* if there are substantial defects in the pleas the demurrer reaches back and attaches to them, even though the replications may be bad; but if there is one good plea the defendant is entitled to judgment, unless there is a good replication.

8. SAME—*when plea to information in quo warranto is good.* Where an information in the nature of *quo warranto* by a city in general terms charges usurpation by the defendant telephone company, a plea is good which sets up the defendant's charter, the ordinance granting it the privilege claimed to be usurped, and alleging acceptance of the ordinance and compliance with the terms imposed thereby.

9. SAME—*when plea to information in quo warranto is bad.* A plea to an information in *quo warranto* by a city against a telephone company which alleges acceptance by the defendant of the ordinance granting to it, upon certain conditions, the privilege claimed to be usurped, but which fails to allege performance by it of such conditions, is bad.

10. SAME—*what constitutes a good replication in quo warranto.* Where a plea to an information in *quo warranto* by a city against a telephone company alleges facts which would constitute a contract between the parties permitting the defendant to occupy the streets with its poles and wires, a replication is good which sets up facts showing that the right of the defendant under the contract has terminated.

11. SAME—*when quo warranto is a proper proceeding.* Where a city claims the right to terminate the license of a telephone company for breach of conditions imposed by the ordinance granting the license but the ordinance does not provide that such breach shall be ground for repealing the ordinance or terminating the license, *quo warranto* is the proper remedy to determine the question of law whether the breach is of a matter vital to the contract and the question of fact whether there has been a breach. (*City of Belleville* v. *Citizens' Horse Railway Co.* 152 Ill. 171, distinguished.)

12. MUNICIPAL CORPORATIONS—*what conditions are vital to telephone company's license to use street.* Where an ordinance grants to a telephone company the right to erect its poles and wires in the streets of the city upon the conditions that the poles shall be so placed and the wires so hung, attached and secured as to avoid danger to persons or property and prevent interference with the service pipes of the city and the lawful use of the streets, such conditions are vital to the contract and must be performed.

13. SAME—*an ordinance granting privilege for an indefinite time is not unconstitutional.* An ordinance granting to a corporation the

right to occupy the streets with telephone poles and wires but reserving the right to grant like privileges to others, does not, by failing to specify the life of the grant, constitute an irrevocable grant of special privileges and immunity in violation of section 14 of article 2 of the constitution, since the life of the grant is limited to the life of the corporation.

14. Same—*when ordinance granting telephone rights cannot be repealed.*  An ordinance granting to a corporation the right to occupy the streets with telephone poles and wires upon compliance with certain conditions specified in the ordinance, which fails to limit the life of the grant, does not create a license at the will of the city and revocable at its pleasure, and the ordinance cannot be repealed so long as the corporation complies with such conditions.

15. Same—*city cannot impose new conditions.*  Where a corporation accepts an ordinance granting to it the right to occupy the streets with telephone poles and wires and complies with all the conditions imposed by the ordinance, the city cannot impose upon it new conditions not contained in the ordinance and forfeit the license for failure to comply with them.

16. Same—*effect of breach of alleged implied conditions.*  The right of a city to eject a telephone company from the streets upon the ground that it has violated implied conditions not contained in the ordinance granting it the right to use the streets must rest upon some other ground than a breach of the contract between the corporation and the city.

17. Same—*city's power to control telephone service must be exercised by general ordinance.*  Unless reserved in the ordinance granting telephone privileges to a corporation, the right of the city to regulate and control the service to the public and compel the corporation to furnish adequate and proper service must be exercised by general ordinance covering the conditions and applying equally to all telephone companies.

18. Telephone companies—*what does not release a telephone company from its obligations.*  A telephone company which has accepted and acted upon an ordinance granting it the right to occupy city streets upon compliance by it with conditions imposed by the ordinance will not be released from its obligation to comply with such conditions though a statute may be enacted subsequently under which companies of that kind may occupy the streets without the city's consent.

19. Same—*act of 1903 does not authorize a telephone company to occupy streets without city's consent.*  The act of 1903, (Laws of 1903, p. 350,) relating to telegraph and telephone companies, was designed to enlarge the powers of telephone companies by giving them the power of eminent domain and to declare the con-

struction and maintenance of telephone lines to be a proper use of a highway, but does not authorize such companies to occupy the streets of a city without the city's consent.

20. SAME—*city has same control over telephone companies now as it had prior to the act of 1903.* The control by a municipal corporation over a telephone company which is reserved by the act of 1903, "in relation to the regulation of the poles, wires, cables and other appliances," is not limited to determining the location and size of the poles and kindred matters, but extends to the whole subject, to the same extent as such control existed prior to the passage of said act.

FARMER and VICKERS, JJ., dissenting.

APPEAL from the Circuit Court of Rock Island county; the Hon. F. D. RAMSEY, Judge, presiding.

J. K. SCOTT, State's Attorney, and G. A. SHALLBERG, City Attorney, (J. T. KENWORTHY, and S. R. KENWORTHY, of counsel,) for appellant:

The ordinance of 1885 contravenes the constitution and is therefore void. Const. of 1870, art. 2, sec. 14; art. 4, sec. 22; *Birmingham* v. *Railway Co.* 79 Ala. 465; *Gas Light Co.* v. *Hamilton,* 146 U. S. 258.

An ordinance of a municipality, when passed under a power, is a law of the State, within the meaning of the constitution. *Moran* v. *Shawneetown,* 77 Ill. 537; *Tudor* v. *Railway Co.* 154 id. 129; *Brinville Water Co.* v. *Mobile,* 186 U. S. 212.

If the ordinance was a license at will, the repealing ordinance was legal and terminated the license. *Lambe* v. *Manning,* 171 Ill. 612.

The expenditure of money by the licensee, if the license is at will, will not create an estoppel to revoke. *Stock Yards* v. *Ferry Co.* 112 Ill. 384.

The council had the right to repeal the ordinance of 1885 for cause. *Belleville* v. *Railway Co.* 152 Ill. 171; *London Mills case,* 105 Ill. App. 146; *Pontiac case,* 192 Ill. 311; *East St. Louis* v. *Gas Light Co.* 98 id. 415.

The ordinance is void as it grants an exclusive privilege in the streets. *People v. Harris*, 203 Ill. 272; *Russell v. Railway Co.* 205 id. 155; *Snyder v. Mt. Pulaski*, 176 id. 397.

If the ordinance of 1885 is in perpetuity or for ninety-nine years it is void. *East St. Louis v. Gas Light Co.* 98 Ill. 437; *Millikin v. Edgar County*, 142 id. 328; *Water Co. v. Freeport*, 186 id. 179; Elliott on Streets, sec. 803.

If the ordinance of 1885 is not a license at will it is void, as an attempt to part with the legislative power of the council. *Attorney General v. New York*, 3 Duer, 119; *Railroad Co. v. Baltimore*, 20 L. R. A. 126; Dillon on Mun. Corp. sec. 97; *Fertilizing Co. v. Hyde Park*, 70 Ill. 634; *Dingman v. People*, 51 id. 277.

The ordinance of 1885 not fixing any time for its enjoyment, is a grant at the will of the council only. *Water Co. v. Boise City*, 59 U. S. C. C. 236; *Granz v. Telephone Co.* 72 id. 189; *Elster v. Springfield*, 30 N. E. Rep. 274.

There are implied conditions in the ordinance of 1885. Bishop on Contracts, (1st ed.) sec. 95; Addison on Contracts, (7th ed.) p. 21, 1043; *Telephone Co. v. Telephone Co.* 199 Ill. 351.

W. B. MANN, for appellee:

Pleadings in *quo warranto* proceedings should conform to the practice of other civil cases in this State. Hurd's Stat. 1905, chap. 110, sec. 11; *People v. Bruennemer*, 168 Ill. 482; *People v. Paisley*, 81 Ill. App. 56; *Medical College v. People*, 182 Ill. 276; *People v. Telephone Co.* 192 id. 311; *Bishop v. People*, 200 id. 36.

A demurrer to the replications will not be carried back to the pleas unless on motion made at the proper time. *People v. Telephone Co.* 192 Ill. 309.

The rules of common law pleading forbid a traverse or confession and avoidance of the inducement in the special traverse, and it is the law in this State that the issuable matter of a special traverse is the denial under the *absque hoc.*

*People* v. *Pullman Car Co.* 175 Ill. 125; *People* v. *Telephone Co.* 192 id. 307; Stephens on Pleading, (Andrews' 2d ed.) 305, 306; Gould's Pl. 370, 371; *Prosser* v. *Woodward,* 21 Wend. 205; *Thomas* v. *Black,* 18 Atl. Rep. 771.

A minute and literal compliance with the very letter of an ordinance is not required,—a substantial performance will prevent a forfeiture. It is not every non-performance of the condition in the act of incorporation, or other misuser, that will forfeit the grant. A substantial performance according to the intent of the license or charter is all that is required. *Railway Co.* v. *People,* 73 Ill. 549; *People* v. *Railroad Co.* 23 Wend. 193; *People* v. *Bristol Turnpike Co.* 23 id. 222.

The ordinance of July 20, 1885, when accepted and acted upon by the appellee, constituted a contract between the appellee and appellant, which could not be revoked by a subsequent ordinance. *London Mills* v. *White,* 208 Ill. 289; *People* v. *Telephone Co.* 192 id. 307; *Gas Light Co.* v. *Lake,* 130 id. 42; *Quincy* v. *Bull,* 106 id. 337; *Belleville* v. *Railway Co.* 152 id. 171; *People* v. *O'Brien,* 111 N. Y. 36; *Telephone Co.* v. *Jersey City,* 49 N. J. L. 303; *New Orleans* v. *Telephone Co.* 40 La. Ann. 41; *Mayor* v. *Railway Co.* 83 Texas, 548; *Harvey* v. *Railway Co.* 186 Ill. 283; *Trust Co.* v. *Baltimore,* 64 Fed. Rep. 153.

The act in relation to telephone companies, approved March 16, 1903, constitutes a grant by the State to telephone companies of the right to use the public streets and alleys of towns, cities and villages without municipal consent, for their poles, wires and fixtures, subject only to the right of cities and villages to make reasonable police regulations. Hurd's Stat. 1905, chap. 134, sec. 19.

Similar statutes have been construed to give to telephone companies the absolute right, without municipal consent, to occupy the public streets of cities and villages so long as they do not interfere with the use of said streets by the public. *Telephone Exchange Co.* v. *Minneapolis,* 81 Minn.

140; *Telephone Co.* v. *Benton Harbor,* 121 Mich. 512; *Telephone Co.* v. *Oshkosh,* 62 Wis. 32; *Chamberlain* v. *Telephone Co.* 119 Iowa, 619; *State* v. *Telephone Co.* 127 id. 194.

The "irrevocable grant of special privileges or immunities," referred to in section 14, article 2, of the constitution, does not have reference to contracts created by a municipality giving to a corporation the right to use its streets, but refers alone to privileges or immunities granted by the State in its sovereign political capacity. *Railway Co.* v. *People,* 73 Ill. 541; *Goddard* v. *Railway Co.* 202 id. 362; Booth on Street Railways, 77, 78; *Railway Co.* v. *Railway Co.* 31 Kan. 660; *Smith* v. *Railway Co.* 158 Ind. 425; *Mayor* v. *Railway Co.* 83 Texas, 548.

A similar clause in the constitution of Alabama was held to cover nothing except the exclusive character of the grant. *Railway Co.* v. *Railway Co.* 79 Ala. 465; *Water Supply Co.* v. *Mobile,* 186 U. S. 212.

Even if grants of the right to use the public streets in perpetuity are prohibited, yet the grant of such rights to a corporation without specific time limit will not be held void for that reason, but will be construed as limited by the life of the corporation. *Turnpike Co.* v. *People,* 82 Ill. 174; *Turnpike Co.* v. *Illinois,* 96 U. S. 651; *Snell* v. *Chicago,* 133 Ill. 413; *Electric Light Co.* v. *Wyandotte,* 124 Mich. 43; *Telephone Co.* v. *Telephone Co.* 118 Ky. 277; *Detroit* v. *Railway Co.* 56 Fed. Rep. 867; *Railway Co.* v. *Detroit,* 64 id. 633; *Detroit* v. *Railway Co.* 184 U. S. 368; *Railway Co.* v. *Casey,* 26 Pa. St. 287.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The controversy in this case is between the city of Moline and the Central Union Telephone Company, appellee, touching the right of appellee to the continued occupation

of the public streets of said city with its poles, wires and appliances. The proceeding was begun by the filing, upon leave granted by the court, of an information in the nature of a *quo warranto* in the circuit court of Rock Island county, and it charged in general terms that the defendant, for the space of one year last past and more, had unlawfully used, and still did use, without any warrant, license, charter or grant, the liberties, privileges, licenses and franchises of maintaining and operating a public telephone system upon the public streets of said city of Moline for hire and reward, which said privileges, liberties, licenses and franchises the defendant, during all the time aforesaid, had usurped and still did usurp, to the damage and prejudice of the People and against the peace and dignity of the same, and it called upon the defendant to make due answer unto the People by what warrant it claimed to have, use and enjoy the privileges, licenses, liberties and franchises aforesaid.

To the information the defendant filed two pleas. By the first plea it set out its charter as a corporation, authorizing it to own and operate telephone lines and exchanges, and the recording of the articles of incorporation in Cook county; an ordinance of the city of Moline, approved July 21, 1885, granting to the defendant the right to erect and maintain upon the public streets, alleys and public grounds of the city of Moline, poles or posts, of wood or other suitable material, to support its wires and appliances, upon conditions contained in the ordinance; the acceptance of the ordinance by the defendant and the expenditure of $60,000 in constructing and maintaining the poles, wires and fixtures authorized by the ordinance, and a compliance by the defendant with the several terms, conditions and limitations of the ordinance, which were set out *seriatim* in the plea. The plea alleged that the defendant was ready and willing and offered to continue to comply with all the terms, conditions and limitations of the ordinance; that it had accepted and complied with the terms of the act entitled

"Telegraph Companies," in force July 1, 1874, and the act entitled "An act relating to the powers, duties and property of telephone companies," approved May 16, 1903, and that it had a right to maintain its poles, wires and appliances in the streets by virtue of said act of 1903. The second plea was the same as the first, with the exception that it did not allege a compliance with the conditions of the ordinance, and merely set forth the passage and acceptance of the ordinance and the acts of the legislature above mentioned as its authority and justification for the user of the streets. Following the facts alleged, each plea contained this averment: "And by the above licenses, grants and warrants the said Central Union Telephone Company, defendant, has used, held and enjoyed, during all the time in said information mentioned, and still uses, holds and enjoys, the said liberties, privileges and franchises, etc., as the Central Union Telephone Company, defendant, well might and still may." Each plea concluded with a traverse, under the *absque hoc,* of the alleged usurpation, and with a verification.

Fifteen replications were filed and afterwards sixteen additional replications. The additional replications, except the sixteenth, were, in substance, the same as the fifteen original ones, the only difference being that the first nine of the original replications concluded with a verification and the remaining six to the country, while all the additional replications concluded to the country and the additional replications were in the form of a special traverse under the *absque hoc.* The first and second replications alleged that the ordinance was repealed before the filing of the information. The third, that the ordinance not having fixed any time for the enjoyment of the license, it was at the will and pleasure of the city, and that in 1903 the council repealed the same, setting out the repealing ordinance. The fourth, fifth, sixth and seventh set up provisions of the ordinance and breaches of the same by the defendant, and alleged that in consequence of such breaches the repealing ordinance was

passed. The eighth and ninth set up the implied condition that defendant would furnish the city with a good telephone system and prompt service at reasonable charges and the breach of that condition, with the repeal of the ordinance in consequence thereof. The tenth, eleventh and twelfth were to the first plea and denied the matters of inducement set up in that plea. The thirteenth denied the allegations of the first plea. The fourteenth was to the second plea, and denied that since the passage of the Telephone act of 1903 the defendant had constructed and maintained its poles and posts in the streets and alleys in such a manner as not to incommode the public, and the fifteenth denied all the matters alleged in the second plea. The sixteenth additional replication was to both pleas, and alleged that the defendant did not, at any time after the passage of the Telephone act of 1903, have the license and consent of the city, by ordinance or otherwise, to maintain upon the streets its poles and appliances.

The ordinance, which was set out *in hæc verba* in the pleas and some of the replications, granted to the defendant, its successors and assigns the right "to erect and maintain upon the public streets and alleys and upon the public grounds of the city of Moline, poles or posts, of wood or other suitable material, to support the necessary telephone wires and other appliances necessary and convenient for the operation of a system of telephones or a telephone exchange in said city," which was followed by a proviso in the same section and by subsequent sections, as follows: *"Provided,* that the said Central Union Telephone Company, and its successors and assigns, shall keep and maintain an office and operator on lines of telephone wires at some convenient point within said city and connected and used with the telephone system of said company: *And provided,* said posts shall be so placed, and the wires upon them be kept at such elevation and so attached and secured at such elevation, as to avoid danger to persons and adjacent prop-

erty and the use of such streets and alleys for other lawful purposes, and such posts, in the business and densely built portions of said city, to be kept properly painted by said company: *And provided further,* that the points for the location of said poles shall be designated by the city council of said city, through its committee on streets and alleys.

"Sec. 2. Said poles shall not be set so as to interfere with the construction or placing of any water pipe, gas pipe, drain or sewer, or the flow of water therein, that has been or may be placed by authority of said city. And in case of bringing to grade or change of grade on any street or alley whereon such posts may have been erected and placed, then said telephone company, its successors or assigns, shall change such posts and re-set the same under the direction of the street and alley committee of the city council of said city.

"Sec. 4. Said city of Moline shall, at all times during the existence of the privilege hereby granted, have free use of the said posts or poles upon which to place the wires for its fire alarm connections, and any and all telephone instruments which may at any time be connected with the said telephone exchange may be used by the public for the purpose of giving alarms of fire, without any charge or toll therefor by the said telephone company.

"Sec. 6. Said city of Moline shall, at all times during the existence of the privilege hereby granted, have from said company, its successors or assigns, the use, free of charge, of four (4) telephones connected with the telephone system of said city, to be placed at such points within the city limits, not more than three-quarters of a mile from the telephone exchange, as the city council may designate, and to be kept and maintained in good repair and working condition by said company, its successors or assigns."

The defendant interposed a general and special demurrer to all the replications, and the court entered an order reciting that it had heard the demurrer, "and having carried said demurrer back to the pleas," sustained said demurrer

to the replications, whereupon the People elected to stand by the replications, and each of them, "with the demurrers so carried back," and the court entered final judgment in favor of the defendant and against the relator, the city attorney of the city of Moline, for costs. The record is brought here by appeal for a review of the judgment on the ground that constitutional questions are involved.

The first question to be considered relates to proper forms of pleading, and it was raised by the special demurrer, which assigned as one of the causes of demurrer that the replications were bad in traversing matters of inducement in the pleas rather than joining in the traverse under the *absque hoc*. When the People call upon one to show by what authority he exercises a license or privilege, which must emanate from the State or one of its agencies, the allegation of usurpation may be, as it was in this case, of the most general character, and the information merely calls upon the defendant to set forth particularly the grounds of his claim and the continued existence of his right. The office of an information in the nature of a *quo warranto* is not to tender any issue of fact, but simply to call upon the defendant, in general terms, to show by what warrant or charter the privilege claimed is held and exercised. (17 Ency. of Pl. & Pr. p. 457.) The defendant cannot traverse an information which is of that character, and a plea of not guilty or *non usurpavit* is not an answer to the information. The People are not bound to show anything, and the defendant must answer by disclaimer or by justifying, and if he justifies he must set out his title, particularly showing by what right he exercises and enjoys the license or privilege. (*Clark* v. *People,* 15 Ill. 213; *Catlett* v. *People,* 151 id. 16.) The sole purpose of the information is to require the defendant to show by what warrant he is holding and exercising the license, privilege or franchise in question, and it is sufficient to allege, generally, that he is holding and exercising the same without lawful authority. (*People ex rel.*

v. *Cooper,* 139 Ill. 461.)    If the defendant justifies, his plea must show not only that he once had the right to use and enjoy the license or privilege, but that he still has it, since the continued existence of the right is essential to the enjoyment of the license or privilege claimed.    The infor-, mation in this case tendered no issue of fact upon which issue could be formed by a common traverse, and the only method of answering it was to set out the title and right of the defendant, and allege that it was by virtue of that title and right that it exercised and enjoyed the license and privilege claimed.    This the defendant attempted to do, and followed the facts alleged with a traverse, under the *absque hoc,* of the general charge of the information.

The nature and design of such a special traverse was explained in the case of *People ex rel. v. Pullman Palace Car Co.* 175 Ill. 125, and it was said that the design of a special traverse, as distinguished from a common traverse, is to explain or qualify the denial, and that the matter set up in the inducement must be such as in itself amounts to a sufficient answer, in substance, to the information.    There was a further statement as to the issuable part of the plea, and of the rule that when the denial under the *absque hoc* is sufficient no issue of fact can be formed on the induce-ment, and although that statement had nothing whatever to do with that case, it was correct as applicable to forming an issue under the traverse.    It is to be remembered, how-ever, that the pleadings in the case then under considera-tion were entirely different from those which were filed in this case.    While the People may make a general charge of usurpation, it is their privilege to make the information specific and set out particular acts as usurpations of au-thority or to set out special causes of forfeiture, and in that case the information set out the charter of the corporation, and specifically alleged, under twenty-five different heads, acts of the corporation which were charged to be usur-pations of powers not conferred by the charter.    By its

amended pleas the corporation set out the extent to which the things charged had been done and their purpose and connection with the successful prosecution of the business which the corporation was chartered to carry on, and after stating such matters of inducement the pleas concluded with the traverse under the *absque hoc*. The matters of inducement were stated for the purpose of explaining and qualifying the general denial of the usurpation of power. The demurrers admitted the truth of the statements made in the pleas, and the question to be determined was the sufficiency of the matters stated in the inducement to constitute valid defenses to the charges. The question how an issue of fact could be formed had no relation to that case, but in the case of *People ex rel.* v. *Central Union Telephone Co.* 192 Ill. 307, the rule stated was followed as applied to replications which were mere denials of matters of inducement and set up no affirmative matter. The prosecution was against the telephone company by its corporate name, which was an admission of corporate existence, precluding the People from denying the fact, and it was also held improper to make such a denial because it was alleged in the pleas as a matter of inducement. In this case the People by some of the replications attempted to traverse mere matters of inducement alleged in the pleas, but in others they set up new and affirmative matter as causes of forfeiture of the contract rights of the defendant, and alleged that the contract was ended by repealing the ordinance which constituted the contract, and the latter replications raised an entirely different question from the one considered in the cases referred to.

If it were not for the rule that the pleadings in a proceeding of this kind should correspond, in the main, to pleadings at common law, there would be much reason for saying that replications should not take issue on the traverse in the plea but should be to the subject matter of defense, and it has been so held in some other jurisdictions.

(17 Ency. of Pl. & Pr. p. 475.)    Under that rule the defendant is particularly notified as to what averments of the plea are not denied and what he is required to meet at the trial, and the rule declared by this court should not be extended to prevent the formation of proper issues, which would be the effect if it were carried to the extent insisted upon by counsel.

The first plea alleged facts which would constitute a contract between the parties permitting the defendant to occupy the streets of the city with its poles, wires and apliances, and certain of the replications alleged facts designed to show that the contract was terminated and that all rights under it had ceased.    If issue had been formed under the traverse by merely re-affirming usurpation, the defendant would only have been called upon to prove the facts alleged in the plea.    If there were breaches of the conditions upon which the license was granted, giving the city a right of election to terminate the contract, it was necessary to allege the exercise of such election and power by the city; and this the replications sought to do.    Either the pleas were bad in not showing the continued existence of the license, or replications properly setting up a termination of the license were good.

Counsel for defendant says that the People could have set up the termination or forfeiture of the license by going back and amending the information.    But the People were not bound to do that.    They are never bound to anticipate the defense which is to be made but may reply the facts which show the invalidity of the title.    In the case of *People ex rel.* v. *Kankakee Improvement Co.* 103 Ill. 491, it was said that upon the defendant setting forth the act of incorporation and justifying under it, the People may reply the cause of forfeiture, citing *People* v. *Bank of Niagara,* 6 Cow. 196, where that was held to be the proper course. The same rule was declared in *People ex rel.* v. *Gary,* 196 Ill. 310, where it was held that the People might, by rep-

lication, deny that the record set up in the plea was a true one. The People had a right to set up, by way of replications, new matter showing that the contract right of the defendant to occupy the streets of the city had terminated.

The demurrer which was filed to the replications opened up the whole record, and the order of the court recites that the demurrer was carried back to the pleas but sustained to the replications. A demurrer, in its effect, reaches back through the whole record and attaches to the first substantial defect in the pleadings. (Gould's Pl. chap. 9, sec. 36; *McDonald* v. *Wilkie,* 13 Ill. 22; *People* v. *Mississippi and Atlantic Railroad Co.* id. 66; *People* v. *Whitcomb,* 55 id. 172; *Distilling Co.* v. *People,* 156 id. 448.) The second plea, which set up the ordinance granting the license to occupy the streets upon certain conditions and which failed to show performance of the conditions, was clearly bad. The plea alleged acceptance but not performance, and consequently did not show any right of the defendant or that there was any existing contract with the city. It also set up certain acts of the legislature, and one of them, the Telegraph act of 1874, which we have held embraces telephone companies, (*Village of London Mills* v. *White,* 208 Ill. 289,) gave the defendant no authority to erect poles or wires upon any street, alley or public ground in any incorporated city without the consent of the corporate authorities of the city and compliance with such terms as might be imposed. Whatever effect might be given to the act of 1903, set up in the plea, the defendant could not avail itself of such right as a release from the obligations of its contract. It could not, in any event, discharge itself from the obligations assumed by the acceptance of the ordinance under which it took possession of the streets. That act, however, gives no authority to a telephone corporation to set poles or string wires in the street of any incorporated city, town or village without the consent of the corporate authorities. The act is designed to extend the charter powers

of telephone companies by investing them with the power of eminent domain, and to declare that the construction and maintenance of telephone lines is a proper use of a highway, and to authorize the construction and maintenance of telephone lines along, upon, under and across any highway, street, alley, water or public ground, provided the public are not incommoded. The act, however, expressly provides that nothing contained in it shall interfere with the control vested in cities, incorporated towns and villages in relation to the regulation of the poles, wires, cables and other appliances. That control is not limited to prescribing the location and size of the poles, and such matters, but extends to the whole subject. There is no provision for giving notice to a city of the intention to construct a line, with the privilege to the city of specifying the portion of the street on which the line shall be placed, as there is in the case of highway commissioners. The whole matter of control by municipalities remains where it was before the act was passed. The facts alleged in the second plea constituted no justification for the occupation of the streets, and the plea was bad. Even if the replications were bad, they were sufficient for a bad plea. (Gould's Pl. chap. 9, sec. 37.)

If, however, there was one good plea and no good replication, the judgment of the circuit court would have to be affirmed, and the important question is whether any of the replications were good. A number of the replications, as before stated, merely denied matters of inducement in the pleas, and the demurrer was properly sustained to them. Others set up a repeal of the ordinance of 1885, without alleging any breach of its conditions or showing any right to repeal it. Others set up what were alleged to be implied conditions not contained in the ordinance, and if there was any right to eject the defendant from the streets for a failure to perform such acts as were alleged in those replications, it must rest on some other ground than a breach of the contract. The city could not impose new or added con-

ditions not contained in the ordinance and forfeit the license for a failure to comply with them. If the city has power to regulate and control the service to the public and compel the defendant to furnish adequate and proper service at reasonable charges, the power must be exercised by general ordinance covering the conditions and applying equally to all telephone companies. Those replications were insufficient. The fourth, fifth, sixth and seventh replications alleged violations by the defendant of the conditions under which it was permitted to occupy the streets by virtue of the ordinance, and that in consequence of such breaches the ordinance was repealed and the contract terminated, and in our opinion those replications were good. In the ordinance giving a right to the defendant to erect its poles and wires in the streets of Moline there was no reservation of a right to repeal the ordinance or terminate the contract in case the defendant failed to comply with the terms of the ordinance. In the case of *City of Belleville* v. *Citizens' Horse Railway Co.* 152 Ill. 171, it was said to be entirely competent for parties to a contract to provide that if one fails to fulfill certain specified terms the others shall be entitled to treat the agreement as at an end. When parties have agreed that one of them shall have an option to terminate the contract if certain of its terms are not observed, the party may exercise his option upon the failure to comply with any such term, and if he elects to treat the contract as at an end it will be discharged, whether the term is vital to the contract or not; but when there is a failure to comply with some term of a contract and there is no agreement that the breach of that term shall operate as a discharge, it is always a question for the courts to determine whether or not the default is in a matter which is vital to the contract. In that case the city had a right to determine the contract under certain circumstances, and it was held that the city properly indicated its election to avoid the contract by passing an ordinance repealing the ordinance that constituted the contract,

but that the city had no right to forfeit to its own use and take away from the railway company the tracks, switches and turn-outs without the judgment of a court. In this case there has been 'no attempt to take away from the defendant its poles, wires or appliances, and what was said about the necessity of a judgment of a court for that purpose has no application here. If the city was authorized to terminate the license of the defendant, this is the proper proceeding to be instituted by the city to oust the defendant from the use of the streets. It is a proper proceeding for presenting the question of law whether there was a right to determine the license and the question of fact whether there was a breach of any condition of the ordinance. This is the identical proceeding provided by law for that purpose, and there is no requirement that there should be a resort to any other.

As there was no expressed condition in this ordinance that the city might treat the contract as at an end for any breach of the condition contained in the ordinance, it is a question of law whether the conditions were vital to the contract and such as authorized the city to repeal the ordinance if they were not complied with. By the ordinance the right was granted provided the defendant should do the things specified under the proviso in section 1, and there were further conditions set forth in sections 2, 4 and 5. The grant and the conditions ran together during the existence of the grant, and clearly the conditions were vital to the contract. The damages for failing to comply with the conditions are not capable of measurement, and the conditions are mainly imposed for the safety and welfare of the public. The city is charged with the care and superintendence of its streets for the safety of the public. It cannot be thought for one moment that the parties contemplated a continued occupation of the streets if the posts should be so placed and the wires upon them should be kept at such an elevation as to be dangerous to the public in the use of the streets and

alleys, or that the city should be relegated to the slow process of some proceeding to compel compliance with the conditions. The city had no power to abdicate its functions in respect to the streets and bind itself by an ordinance to permit the continued enjoyment of the license in violation of its terms or the continuance of a public nuisance. It is of the utmost importance to the public that there should be in the city, charged with public duties, some immediate and effective power to insure compliance by the defendant with the terms of the license, and surely the defendant would not be permitted to occupy the streets without complying with the conditions of the ordinance or to stand in defiance of the city and insist that some other proceedings should be begun, which after long delays might result in compelling obedience to the conditions, permitting the public safety to be endangered or the public right delayed in the meantime. The replications referred to allege the failure of the defendant to erect its poles at the points directed by the committee of the city council, failure to paint the poles as required by the ordinance, and failure to place the posts and the wires upon them at such elevation and so attached and secured as to avoid danger to persons and adjacent property,—and these were conditions upon which the license was granted.

The constitutional question must be determined against the People. The argument is, that the ordinance is in conflict with section 14 of article 2 of the constitution, as making an irrevocable grant of special privileges and immunity, and is answered by numerous decisions of this court, the first of which was *Chicago City Railway Co.* v. *People,* 73 Ill. 541. The grant is not for any definite time, but is for the life of the corporation and limited to that time, (*St. Clair County Turnpike Co.* v. *People,* 82 Ill. 174,) and the city reserved the right to grant to any other company or person like permission for the use of the streets. Practically all of the lengthy argument of counsel for the People has been devoted to the constitutional question and an attack upon

the decisions of this court concerning such question, and we have had no aid from counsel on that side in deciding the material and important questions of pleading discussed by counsel for the defendant and involved in the case.

It follows from what has been said that in our judgment certain of the replications were good, and the demurrer, when carried back as recited in the order of the court, should have been sustained to the second plea. We regard the first plea as a good one and most of the replications to it as insufficient. The first, second and third replications were bad, for the reason that they showed no breach of the contract by the defendant and no authority for the repealing ordinance. The license was not at the will of the city and revocable at its pleasure, and the council could not repeal it so long as the defendant complied with its conditions. The fourth, fifth, sixth and seventh replications were good for the reasons we have stated, and the court erred in sustaining the demurrer as to them. The eighth and ninth were bad for attempting to import into the contract conditions not contained in it. The city could not add a new condition without the consent of the defendant. The tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth replications were all bad, as attempting to traverse matters of inducement by simple denials. The only issuable matter in the pleas was the traverse under the *absque hoc,* and if the People desired to take issue upon them, the proper method was to join in the traverse by re-affirming the usurpation, in which case the burden would have been upon the defendant to prove the facts alleged in its plea. These were all the original replications, and the additional replications were all bad on account of one fault, which was, that they all contained a traverse upon a traverse. Each one of them concluded with a traverse, under the *absque hoc,* of the traverse contained in the pleas, and while a traverse upon a traverse is sometimes permissible, it is not proper in a case like this. The court erred in not sustaining the demurrer

when carried back to the second plea, and also erred in sustaining the demurrer to the fourth, fifth, sixth and seventh replications.

The judgment is reversed and the cause is remanded for further proceedings in accordance with the views herein expressed.                    *Reversed and remanded.*

FARMER and VICKERS, JJ., dissenting:

We do not agree with the conclusion of the court that the city council of the city of Moline could determine that appellee had not complied with the provisions of the ordinance, and without any other adjudication of the matter, and without affording appellee an opportunity to be heard, repeal the ordinance authorizing it to maintain and operate its telephone system in the city. In *Chicago Municipal Gas Light Co.* v. *Town of Lake,* 130 Ill. 42, this court said (p. 54): "The privilege of the use of the public streets of a city or town, when granted by ordinance, is not always a mere license and revocable at the pleasure of the municipality granting it, for if the grant is for an adequate consideration and is accepted by the grantee, then the ordinance ceases to be a mere license and becomes a valid and binding contract; and the same result is reached where, in case of a mere license, it is, prior to its revocation, acted upon in some substantial manner, so that to revoke it would be inequitable and unjust." This is approved in subsequent cases decided by this court and is in harmony with decisions of courts of last resort in other States.

If the ordinance, when accepted and acted upon, becomes a valid and binding contract and no power of revocation is reserved to the city in the ordinance, we are unable to see any authority in the city council to repeal it because it concludes the telephone company has not complied with the requirements of the ordinance. Differences of opinion may well arise as to whether the conditions of the ordinance have

been kept and performed by the telephone company, or, if there has been any failure in this respect, whether such failure was in a material respect. The rule of law we think was correctly stated in *City of Belleville* v. *Citizens' Horse Railway Co.* cited in the opinion of the court, in the following language: "But when a term of the contract is broken and there is no agreement that the breach of that term shall operate as a discharge, it is always a question for the courts to determine whether or not the default is in a matter which is vital to the contract, for if it is not the contract will not be discharged."

In *Michigan Telephone Co.* v. *City of St. Joseph,* 121 Mich. 502, the city of St. Joseph granted the Telephone and Telegraph Construction Company permission to erect poles and string wires in its streets for a telephone system, which it did at large expense. Afterwards that company sold its properties, rights and privileges to the Michigan Telephone Company, which company continued the poles and wires in said city and operated a telephone exchange therein. The Michigan Telephone Company furnished the city two telephones free and four others at reduced rates. It also permitted the city to use its poles for fire alarm wires without charge. After the use of the streets six years by the telephone company, under the permission given by the city, the council passed a resolution declaring the poles and wires a nuisance and directing the street commissioner to remove them. The Michigan Telephone Company filed a bill asking that the city be enjoined from removing its poles and wires, and the Supreme Court of the State of Michigan said: "When the construction company and the complainant accepted the privileges granted to them by the laws of the State, and the municipality had duly given its permission and the corporations had expended their money in making valuable improvements, contracts were entered into which neither the State nor the municipality could impair or destroy, in the absence of power to do so being reserved in the

grant itself, or in the constitution, which becomes a part of all such contracts."

The opinion in this case holds that the proper issue to be tried under the pleadings is whether appellee has violated the terms of the ordinance. The effect of such holding, as we understand it, is, that if, on the trial, it shall be found appellee has not violated the conditions of the ordinance, then said ordinance is not repealed and the repealing ordinance is of no effect. If, on the other hand, it shall be found appellee has violated the conditions of the ordinance, then said ordinance is to be considered as having been repealed and the repealing ordinance is made valid and effective. In other words, the city may pass a repealing ordinance without any previous hearing or adjudication to determine the existence of the grounds upon which it bases its right to repeal, and if the telephone company refuses or fails to vacate, may have the validity of the action determined afterwards in a *quo warranto* proceeding. This seems to us a reversal of the proper order of procedure. If the city council had the legal right to repeal the ordinance, the repealing ordinance was effective from the time of its passage. It seems unusual to say that in the absence of a reservation in the ordinance of power to do so the city of Moline could terminate the contract with appellee, and if appellee refused to acquiesce in the action of the city council the city could then call upon the courts to adjudicate the fact as to whether appellee had failed to comply with the terms of the contract. It is very clear that appellee was bound to a substantial compliance with the ordinance and could not avoid the duties and liabilities imposed by it, but we are of opinion that whether it was in default should be adjudicated before its rights could be annulled and its property destroyed or damaged, instead of afterward.