The Austin Brothers Transfer Company, Appellee, *vs.* Henry Bloom, Appellant.

*Opinion filed April 24, 1925.*

1. Public utilities—*term "public utility" includes public carriers within the State.*  The term "public utility" includes every person who now or hereafter may own, control, operate or manage within the State, directly or indirectly for public use, any plant, equipment or property used or to be used for or in connection with the transportation of persons between points within the State.

2. Same—*what determines whether business is a public utility.*  Whether a given business or industry is a public utility depends upon the public character of the business or service rendered as determined by the special facts connected with the operation of the business, which makes its regulation a matter of public consequence and concern because it affects the whole community.

3. Carriers—*who is a private carrier.*  A private carrier, as ordinarily defined, is one who, without being engaged in such business as a public employment, undertakes to deliver goods or passengers for hire or reward.

4. Same—*who is a common carrier.*  A common carrier of passengers is one who undertakes for hire to carry all persons who may apply for passage so long as there is room and there is no legal excuse for refusal, and the term includes jitney bus proprietors and owners of hacks and omnibuses, regardless of whether they operate in cities or from town to town or from city to city.

5. Same—*when operator of taxi-cab must comply with Public Utilities act.*  One who operates a taxi-cab over a hard road between two cities and for hire indiscriminately accepts and discharges passengers at all points along the route, in competition with and at the same price charged by a motor bus line, is operating a public utility and must comply with the Public Utilities act as to obtaining a certificate of convenience and necessity.

Appeal from the Circuit Court of Marion county; the Hon. F. R. Dove, Judge, presiding.

W. G. Murphey, and Noleman, Smith & Dallstream, for appellant.

Charles H. Holt, for appellee.

. Mr. Justice Heard delivered the opinion of the court:

Appellee, a corporation operating a motor bus over Route 2 of the State highway system between Centralia and Sandoval under a certificate of convenience and necessity granted it by the Commerce Commission, filed complaint with the commission against appellant, charging him with. operating a motor bus between Centralia and Sandoval as. a public utility without having complied with the provisions of the Public Utilities act. A hearing was had before the commission, which found that the facts as alleged in the complaint were true and ordered appellant to discontinue the operation of a public utility business, and cease operating as a public utility in the State of Illinois until such time as he shall have applied for and secured from the commission a certificate of convenience and necessity authorizing him to continue such business. From this order appellant appealed to the circuit court of Marion county, where the order of the commission was confirmed, and he has appealed to this court from the order of confirmation entered by the circuit court.

It is the contention of appellant that the order of the commission is without substantial foundation in the evidence, and that he was not operating a public utility and was therefore beyond the jurisdiction of the commission. The term "public utility" includes every person who now or hereafter may own, control, operate or manage within the State, directly or indirectly for public use, any plant, equipment or property used or to be used for or in connec-

tion with the transportation of persons between points within this State. (Public Utilities act, sec. 10; *Public Utilities Com.* v. *Bartonville Bus Line,* 290 Ill. 574.) The question, whether a person, company or corporation is owning, operating or controlling a public utility is one that necessarily depends upon the special facts connected with the management, operation or control of such business. (*Public Utilities Com.* v. *Noble,* 275 Ill. 121.) Whether a given business or industry is a public utility depends upon the public character of the business or service rendered, which makes its regulation a matter of public consequence and concern because it affects the whole community. (*Public Utilities Com.* v. *Monarch Refrigerating Co.* 267 Ill. 528.) Private carriers, as ordinarily defined, are those who, without being engaged in such business as a public employment, undertake to deliver goods or passengers for hire or reward. A common carrier of passengers has been defined as one who undertakes for hire to carry all persons indifferently who may apply for passage so long as there is room and there is no legal excuse for refusal, and accordingly jitney bus proprietors, owners of stage coaches, hacks and omnibuses have generally been held to be common carriers. This is so because in their business they serve all the public alike who apply to them for carriage, so long as they have room, and they are held common carriers regardless of the fact whether they operate in cities or from town to town or from city to city, so long as they maintain their status as public carriers, carrying all who apply and refusing none unless they have no room or for some other legal reason may refuse. (*Rathbun* v. *Ocean Accident Corp.* 299 Ill. 562.) Property becomes clothed with a public interest when used in a manner to make it a public consequence and affects the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use and must submit to be controlled by the public for

the common good to the extent of the interest he has thus created. *Public Utilities Com.* v. *Monarch Refrigerating Co. supra.*

Appellant contends that he was engaged in running a taxi-cab, and that his business consists in carrying people who make private contracts with him. It does not follow that because a man is operating a taxi-cab he is operating a public utility. On the other hand, it does not necessarily follow that a man engaged in operating a taxi-cab in pursuance of special contracts for its use may not operate that same taxi-cab as a public utility. By paragraph 72 of chapter 111*a* (Callaghan's Stat. Ann.) it is provided that no person shall operate any motor vehicle along or upon any public street or highway in this State for the carriage of passengers for hire, indiscriminately accepting and discharging such persons as may offer themselves for transportation along the course in which such vehicle is operating, without complying with the provisions of the Public Utilities act. The commission found that appellant for three months prior to the hearing had been operating a five-passenger sedan between the village of Sandoval and the city of Centralia,—a distance of six miles,—over a hard road, for hire, and indiscriminately accepting passengers and discharging them at all points along the route, in competition with and at the same price charged by appellee's motor bus. The commission also found that appellant had been operating said motor car over that route as a public utility without having complied with the Public Utilities act. Without going into the details of the evidence, it is sufficient to say that the findings of the commission, and of the circuit court confirming the same, were fully warranted by the evidence in the case.

The order of the circuit court is therefore affirmed.

*Order affirmed.*