(No. 37151.—

CURTIS HENRY OLSEN *et al.*, Appellants, *vs.* THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed May 25, 1962.—Rehearing denied September 27, 1962.*

L. LOUIS KARTON and ALVIN EDELMAN, both of Chicago, for appellants.

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN, and ROBERT J. COLLINS, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The superior court of Cook County sustained a motion to strike the plaintiffs' complaint for an injunction to restrain the City of Chicago and its Public Vehicle License Commissioner from interfering with the activities of the plaintiffs in the operation of taxicabs between the Chicago-O'Hare International Airport and the suburban area surrounding the City of Chicago. The plaintiffs elected to stand by their complaint and have appealed directly to this court from the ensuing decree. The trial judge has certified

that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal. Ill. Rev. Stat. 1961, chap. 110, par. 75.

The complaint alleged that the plaintiffs are owners or operators of taxicabs who have provided taxicab service to and from the airport and the suburban communities; that those plaintiffs who are drivers are licensed by the State of Illinois and that "many have suburban licenses." It also alleged that beginning in 1945 the City of Chicago commenced a program designed to acquire the old Douglas Airport, and thereafter purchased property and expanded and developed the airport, which became a part of the City by annexation in March of 1958; that "for a long period" of time prior to the City's acquisition of the land and annexation of the airport, the plaintiffs provided taxicab service to and from the airport and the suburban communities; that "during the greater portion of the period" from 1954 on, almost the only taxicab service at the airport was provided by plaintiffs and other suburban taxicabs; that Chicago taxicabs did not provide service adequate to the needs of Chicago-bound passengers and are inadequate to provide service to the suburbs; that on numerous occasions there have been no Chicago cabs at the airport, and that Chicago cab drivers have "little or no familiarity with the many suburban communities and have not shown any willingness to take passengers anywhere but to Chicago."

The complaint further alleged that the plaintiffs' cabs "substantially" meet the requirement set for Chicago cabs; that their cabs and meters are maintained according to those standards and that their "rates are only slightly higher than Chicago cab meter rates, and on most trips are lower than Chicago taxicab fares."

The power of a municipality to regulate or prohibit the use of its streets for private gain is established, (see *e.g., City of Decatur v. Chasteen,* 19 Ill.2d 204) and munici-

palities have been granted specific authority to regulate taxicabs. (Ill. Rev. Stat. 1961, chap. 24, par. 11—42—6.) The Chicago ordinance permits taxicabs licensed by other municipalities to bring passengers into the City of Chicago, but it prohibits them from soliciting or accepting fares within the City.

While the plaintiffs state that they base their claim entirely upon a Federal statute, to which reference will be made, their briefs nevertheless contain intimations of an attack upon the validity of the City's ordinance on the ground that it arbitrarily discriminates against them in violation of the State and Federal constitutions. Those intimations make it appropriate to point out the precise nature of the plaintiffs' claim. They do not seek authority to pick up only passengers going to the municipalities in which they are respectively licensed to operate. Indeed, they do not suggest that the three very small municipalities that are named as having issued taxicab licenses to them are responsible for an appreciable, or even a measurable fraction of the total taxicab business originating at the airport. What the plaintiffs seek is authority to solicit and pick up passengers going from the airport to any suburban municipality. In other words, they insist upon the right to pick up passengers in one municipality in which they have no license to operate, and to carry those passengers to other municipalities in which they have no license to operate.

Under these circumstances, the plaintiff's intimation that the ordinance somehow arbitrarily discriminates against them is not sustained by the allegations of their complaint.

Although the plaintiffs concede that "the City has complete power to regulate the use of its streets by taxicabs," they argue "that this case rests upon a fact peculiar to this situation which takes the instant case out of the general rule. We have based our case," they say, "on the requirement of the Federal Airport Act that the airport 'will be

available for public use on fair and reasonable terms and without unjust discrimination.' (60 Stat. 170, 49 USC Sec. 1110)."

This selective quotation from the Federal statute creates a misleading impression. The full text of the provision upon which the plaintiffs rely is as follows: "As a condition precedent to his approval of a project under this chapter, the Administrator [of the Federal Aviation Agency] shall receive assurances in writing, satisfactory to him, that (1) the airport to which the project relates will be available for public use on fair and reasonable terms and without unjust discrimination; * . * *."

The statute relates to the conditions upon which Federal funds are to be made available for the development of airport projects, and it provides for contractual agreements between the Administrator and the local sponsor of the project, in this case the City of Chicago. It is not couched in terms of prohibition. Rather it speaks.in terms of contractual assurances, and its context strongly suggests that it relates only to matters directly concerned with aviation, with which the Administrator might be thought to have special competence. Congress could hardly have intended that everyone who wished to operate a bar, a restaurant or a newsstand, or to provide any of the other multitudinous services available at a large airport would, by virtue of this provision, have an untrammeled right to do so. See Anno., 40 A.L.R. 2d 1060.

Nor has the statute been interpreted to require such a result. The contract between the Administrator and the City provides that "nothing contained herein shall be construed to prohibit the granting or exercise of an exclusive right for the furnishing of nonaviation products and supplies or any service of a nonaeronautical nature." The plaintiffs argue that "where a statute specifies certain terms and conditions, they cannot be modified or changed by a regulation different or inconsistent with the statute." But as we

have indicated, we are of the opinion that this contractual provision, prescribed by the Administrator, accurately reflects the meaning of the statute.

The cases that the plaintiffs rely upon, *Friend* v. *Lee,* 221 Fed.2d 96 (D.C. Cir. 1955), and *Patton* v. *Administrator of Civil Aeronautics,* 217 F.2d 395 (9th Cir. 1954), do not suggest a contrary result, for they arose under different statutes and different regulations. Moreover, each of those cases involved interference with an arrangement already made by an arriving passenger. No such element is present in this case. From the plaintiffs' motion for a stay order presented to this court after the trial court had dismissed the complaint, it appears that the provision of the ordinance that prohibits the solicitation of business at the airport by taxicab drivers who are not licensed by the City does "not apply where the person at said airport desiring other taxicab service has personally or through his agent previously by letter, telegram or telephone specifically engaged a suburban taxicab to transport him to any of the suburbs of the City of Chicago."

The decree of the superior court of Cook County is affirmed.

*Decree affirmed.*