AMERICAN TELEPHONE AND TELEGRAPH COMPANY *et al.,* Plaintiffs-Appellees, v. THE VILLAGE OF ARLINGTON HEIGHTS *et al.,* Defendants-Appellants.

First District (4th Division)   No. 87—3357

———

Opinion filed August 25, 1988.—Rehearing denied September 21, 1988.—Modified opinion filed September 22, 1988.

Jack M. Siegel, of Chicago, for appellants.

Thomas R. Phillips, O. Carey Epps, and Dennis S. Pines, all of American Telephone & Telegraph Company, and Gerald A. Ambrose, J. Andrew Schlickman, John A. Heller, and Alan F. Curley, all of Sidley & Austin, both of Chicago, for appellees.

Paul N. Keller, of Park Ridge, and James W. Binninger, of Hanover Park, for amicus curiae Northwest Municipal Conference.

JUSTICE JOHNSON delivered the opinion of the court:

This is an interlocutory appeal from the order of the circuit court of Cook County granting plaintiffs, American Telephone and Telegraph Company and AT&T Communications of Illinois, Inc., a preliminary injunction to enjoin defendants, the Villages of Arlington Heights, Palatine, Barrington, and Lake Barrington and the City of Crystal Lake (all municipal corporations in Illinois) from interfering with their installation of a cable system in the public streets. The trial court further ordered that a team of three arbitrators be chosen to aid the court in deciding the issue of fair compensation. On appeal, defendants raise the following issues: (1) whether they have an absolute right to bar plaintiffs from the use of their streets for any reason they believe is

proper, and (2) whether the trial court abused its discretion by issuing a preliminary injunction.

We affirm in part and reverse in part.

American Telephone and Telegraph Company is authorized by the Federal Commerce Commission to provide interstate long distance telephone and telecommunication services throughout the United States. AT&T Communications of Illinois, Inc., holds a certificate of public convenience and necessity from the Illinois Commerce Commission (hereinafter ICC) to provide intrastate long distance and telecommunication services in Illinois. Plaintiffs planned to construct a fiber optics system from Glenview to Rockford, approximately 85 miles. An easement was purchased in the right-of-way of Chicago and Northwestern Railroad in order to install the cable on private property. However, plaintiffs required approximately 1,200 feet of public way through defendants' streets in order to make the cable contiguous and operational.

Plaintiffs hired Donahue & Associates, an engineering firm, to design the cable system. In February 1987, a permit coordinator from the firm began inquiries with respect to securing permits from defendants. Plaintiffs were informed that unless they entered into a franchise agreement with defendants no action would be taken on their permit applications. Defendants sought Northwest Municipal Conference, an organization representing approximately 22 suburban communities in Cook County, to represent them in negotiations with plaintiffs concerning such agreements.

By August 1987, plaintiffs had not been able to secure permits from defendants. Thereafter, plaintiffs sent a 10-day notice to defendants, pursuant to "An Act relating to the powers, duties and property of telephone companies" (Ill. Rev. Stat. 1985, ch. 134, par. 20) (hereinafter Telephone Act). The notice indicated that plaintiffs intended to begin construction of their cable system under defendants' streets and requested defendants to provide time, manner, and place specifications within 10 days, as required by the Telephone Act. Defendants failed to respond and, after waiting the required time, plaintiffs commenced construction. Defendants issued stop work orders and plaintiffs filed an action in the circuit court of Cook County.

The trial court issued a preliminary injunction, finding that defendants "exceeded the reasonable scope of their regulatory powers." The court denied defendants' request to stay its order. Subsequently, defendants sought stay of the preliminary injunction pending resolution of this appeal. The motion was denied by court order on November 6, 1987.

Defendants contend that plaintiffs are not entitled to utilize their public streets without their consent. They argue that the *City of Geneseo v. Illinois Northern Utilities Co.* (1941), 378 Ill. 506, *cert. denied* (1942), 316 U.S. 670, 86 L. Ed. 1746, 62 S. Ct. 1046, resolves any doubt concerning a municipality's authority over the streets therein. The *Geneseo* court held that the authority granted to a municipality to allow or refuse a license, permit, or franchise to a public utility was not repealed by the Public Utilities Act (Ill. Rev. Stat. 1939, ch. 24, par. 383). The court further held that the Public Utilities Act does not vest power in the ICC to extend a franchise which has expired, or the exclusive right to authorize a public utility to occupy a street without a franchise or permit. (*Geneseo*, 378 Ill. at 530.) However, the court acknowledged the well-settled rule that where there is a conflict between a specific grant of power to the ICC which is in opposition to a similar power granted to a city or municipality, the former will prevail. *Geneseo*, 378 Ill. at 514.

The *Geneseo* court does not address the rights accorded to a public utility where a certificate of public convenience and necessity is issued by the ICC, pursuant to the Public Utilities Act (Ill. Rev. Stat. 1985, ch. 111²⁄₃, par. 8—406) (hereinafter Utilities Act). Neither does the court discuss rights afforded the plaintiffs under the Telephone Act (Ill. Rev. Stat. 1985, ch. 134, par. 20). These issues are germane to the present case; therefore, *Geneseo* is not dispositive of this case.

Defendants also rely on the Cities and Villages Act (Ill. Rev. Stat. 1985, ch. 24, pars. 11—80—1 to 11—80—3, 11—80—7) and the Telephone Act to support their position. The relevant sections in the Cities and Villages Act only grant municipal corporations regulatory powers. The extent of those powers are designated in the second proviso of section 4 of the Telephone Act.

■ The Telephone Act sets forth the rights accorded to telephone companies to construct their facilities upon all State public streets. It also outlines the proper procedure for gaining access to the streets. Contrary to defendants' assertion, a complete reading of section 4 of "An Act to revise the law in relation to telegraph companies" (Ill. Rev. Stat. 1985, ch. 134, par. 4) as well as section 4 of the Telephone Act clearly shows that defendants' consent is not mandatory before access to the streets can be obtained. (See Ill. Rev. Stat. 1985, ch. 134, pars. 4, 20.) Section 4 of the Telephone Act expressly authorizes the telephone company to install its facilities when it is necessary. The first proviso suggests that the Telephone Act shall not interfere with the regulatory powers presently vested in cities and unincorporated towns and villages. However, the second proviso clearly demonstrates the ex-

tent of a municipality's power to regulate its streets by authorizing it to impose time, manner, and location restrictions. The second proviso requires the municipality to provide such specifications, if any, within 10 days of receiving notice from the telephone company of its intended construction. If specifications are not received within the appropriate time period, the proviso authorizes the telephone company to proceed with its construction, "in order not to interfere with other proper use of the street." Ill. Rev. Stat. 1985, ch. 134, par. 20.

As the facts reveal, plaintiffs gave defendants notice of their intended construction. Yet, defendants did not respond or furnish any time, manner, or location specifications within 10 days. Thus, in complying with the statute, plaintiffs commenced construction.

■ Defendants assert that *People ex rel. Shallberg v. Central Union Telephone Co.* (1908), 232 Ill. 260, firmly indicates that section 4 of the Telephone Act does not give the telephone company authority to utilize the streets without the municipality's consent. The case was an action by the City of Moline to have the telephone company remove its facilities from the streets of Moline. Moline enacted a special ordinance in 1885 which allowed the telephone company to install its cable in the streets. Moline repealed that ordinance in 1903. Central Union alleged that its authority to use the streets was based on its acceptance of the special ordinance and the Telegraph and Telephone Act of 1903. The court held that once a municipality creates a special ordinance allowing a telephone company to use its streets, a contract is formed between them. The court further held that the telephone company cannot rely on the Telephone Act to excuse its nonperformance under the contract. (*Central Union Telephone Co.*, 232 Ill. at 275.) However, it is not this holding on which defendants rely. Immediately after its holding, the court stated, in *dicta*, that section 4 requires a telephone company to obtain consent from a municipality before constructing its facilities in the streets. We agree that section 4 does require the municipality's consent to use its streets. Nevertheless, this consent is for the purpose of notifying the municipality in advance of intended construction so that it can exercise its regulatory power of time, manner, and location of the construction. Hence, the reliance on *Central Union Telephone Co.* is without merit since the facts are distinguishable from the present case and *dicta* is not binding authority.

Defendants' reliance on *Reith v. General Telephone Co.* (1974), 22 Ill. App. 3d 337, is also misplaced. The issue in *Reith* was whether a company that obtains a license from a municipality to use its streets can evade liability when injuries result from such use. This issue has little, if any, relevance to the case at bar.

■ Under Illinois law, neither plaintiffs nor defendants have an absolute right over the use of public streets.

"The public streets are held in trust for the use of the public. [Citations.] And while power may be granted to the General Assembly to permit the use or the restriction of the use of the streets, such power is to be strictly construed. Numerous powers and rights have been granted to a municipality by the General Assembly over the streets of a city, but they are regulatory in character, ***." *Village of Lombard v. Illinois Bell Telephone Co.* (1950), 405 Ill. 209, 216.

Under the Utilities Act (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 8—406) the ICC issues a certificate of public convenience and necessity to a public utility company which demonstrates (1) that the proposed construction is needed to provide more efficient service, (2) that the company is capable of effectively managing such construction, and (3) that the company can engage in such construction without exposing itself or customers to financial hardship. (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 8—406(b).) Although the certificate shall not be "construed as granting a monopoly, or an exclusive privilege, immunity or franchise" (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 8—406(e)), it does grant the certificate holder some rights. We find that a municipality does not have absolute power over the use of its streets.

Defendants' final contention is that the preliminary injunction was improper on two grounds. First, defendants argue that plaintiffs failed to meet the requirements for issuance of a preliminary injunction. Secondly, they urge that a court of equity is without authority to set up arbitration to determine what compensation is owed to the municipality for use of its public streets.

■ The purpose of a preliminary injunction is to "preserve the status quo until the case can be decided on the merits." (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 382.) In order for a preliminary injunction to issue, the moving party must show "(1) that he possesses a clearly ascertained right which needs protection, (2) that he will suffer irreparable harm without the injunction, (3) that there is no adequate remedy at law for his injury, and (4) that he is likely to be successful on the merits of his action. [Citation.]" *Prentice Medical Corp. v. Todd* (1986), 145 Ill. App. 3d 692, 697.

■ Illinois courts have consistently defined the status quo as "the last actual, peaceful, non-contested status which preceded the pending controversy." (*In re Marriage of Sherwin* (1984), 123 Ill. App. 3d 748, 753; *Deisenroth v. Dodge* (1953), 350 Ill. App. 20, 22-23.) Although the general practice is to preserve the status quo by keeping all actions at

rest, "it sometimes happens that the status quo is a condition not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable injury on the complainant." (*Deisenroth*, 350 Ill. App. at 23.) Here, plaintiffs were legally engaging in the installation of their cable system when defendants put a stop to any further construction. As mentioned earlier, plaintiffs were constructing under a schedule consistent with weather conditions and competition. Therefore, the status quo was preserved by issuing the preliminary injunction.

Both the Utilities Act and the Telephone Act establish plaintiffs' right to construct their facilities upon public streets. Also, plaintiffs sustained their burden in the trial court that they will suffer irreparable harm, by means of loss of competitive leverage and loss of customers, if they fail to meet their deadline for installation of the cable system. The Illinois courts have recognized that "[t]he concept of irreparable injury *** denotes loss of competitive position, a species of very real but intangible harm not readily subject to measurement by any certain pecuniary standard. [Citation.]" *Prentice Medical Corp. v. Todd* (1986), 145 Ill. App. 3d 692, 701.

Furthermore, an adequate remedy at law is defined as "clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy." (*K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1021.) Applying this principle, the computation of damages for loss of competitive edge is not practical. Consequently, there is no adequate remedy at law. Based on the above facts, we find that it is likely that plaintiffs would prevail on the merits.

Nevertheless, defendants are correct in urging that the injunctive order was overly broad. A court of equity does not have authority to order arbitration to determine what "fair compensation" should be paid to the municipalities. Such authority is within the legislative branch of each municipality. Moreover, plaintiffs did not seek this relief in their pleadings. (*People ex rel. Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 129 Ill. App. 3d 584, 591.) Hence, the injunctive order was improper on this point.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed as to that part of the injunction authorizing plaintiffs' use of the public streets within the municipalities and reversed as to that part of the injunction ordering arbitration.

Affirmed in part and reversed in part.

JIGANTI, P.J., and LINN, J., concur.