**DIGINET, INC., a Nevada, corporation, Plaintiff,**

**v.**

**WESTERN UNION ATS, INC., a Delaware corporation, and City of Chicago, Defendants.**

**CITY OF CHICAGO, an Illinois municipal corporation, Cross–Claimant,**

**v.**

**WESTERN UNION ATS, INC., a Delaware corporation, Cross–Defendant.**

No. 91 C 0156.

United States District Court, N.D. Illinois, E.D.

Feb. 27, 1991.

Dan R. Sampen, Jacob J. Meister, Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for Diginet, Inc.

Thomas F. Geselbracht, John E. Mitchell, Rudnick & Wolfe, Chicago, Ill., Patricia N. Young, MCI Communications Corp., Washington, D.C., for Western Union ATS, Inc.

Stuart D. Fullerton, Ruth M. Moscovitch, Emily Nicklin, Kelly Raymond Welsh, Bennett W. Lasko, City of Chicago, Law Dept., Chicago, Ill., for City of Chicago.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND INJUNCTION ORDER

HART, District Judge.

This matter is before the court on the motion of defendant and cross-plaintiff City of Chicago's ("the City") motion for a preliminary injunction to enjoin the defendant Western Union ATS, Inc. ("ATS") from expanding its existing fiber optic network under the streets of Chicago. A hearing was held on the motion at which the parties to the motion submitted documentary evidence and testimony.

### I.

#### Nature of the Case

Since the breakup of the AT & T network, there has been growth in the number of companies engaged in telecommunications service using fiber optic cables. Fiber optic cables are bundles of hair-thin glass fibers through which laser light-beams carry communications, and computer and other data at high speed. The cables are small in diameter and can be squeezed into small conduits. Their capacity and conducting speed are greater than other conducting materials and are more secure from interception and interference. A common purpose is to provide hook-ups between long distance carriers (such as AT & T, MCI, U.S. Sprint, Allnet, etc.) and high-volume-usage customers. Obtaining such hook-ups avoids the expense of using the Bell System's local switching exchanges.

This suit was brought by Diginet, Inc. ("Diginet"), a corporation engaged in the business of providing fiber optic communications. ATS entered into a number of contracts with Diginet utilizing ATS's system in Chicago. The contracts require that Diginet pay ATS for, among other things, its use of rights-of-way.

The City advised Diginet that ATS does not have authority to use street rights-of-way for fiber optic cables and informed Diginet that it must obtain authorization from the City to complete the construction and operation of its system connections. ATS denied to Diginet that it lacked authority to use the rights-of-way for fiber optic purposes, demanded that Diginet continue to pay it in accordance with its contracts and threatened to cut off service if Diginet failed to pay pursuant to the terms of the Diginet–ATS contracts. Diginet withheld payments, filed a declaratory judgment suit and sought a preliminary restraining order. Diginet and ATS have resolved issues relating to immediate disconnection.

The City filed a cross-claim against ATS. The City seeks a declaration as to ATS's right to occupy street rights-of-way and damages. The City has filed a motion for a preliminary injunction to enjoin ATS "from installing additional fiber optic cable network on, under or over the public ways of the City" pending resolution of this case. The City contends that the existing fiber optic cable was constructed by Western Union Corporation ("Western Union") and would be expanded by ATS in violation of a City ordinance that provides that no person shall install or maintain any wire, pipes or conduit underneath the public way without having obtained specific authority by ordinance passed by the City Council.

ATS claims that (1) it is a "telephone company" within the meaning of the Telephone Act of 1903, Ill.Rev.Stat., ch. 134 §§ 17–20; (2) the Telephone Act empowers it to exercise the power of eminent domain over City streets by giving the City a ten-day notice (which it did) of its intention to install additional cable under the streets; (3) the City may not impose or charge for use of the streets in excess of any sum reasonable for regulatory purposes (which

ATS says the City is attempting to do); and (4) ATS will suffer irreparable harm if it is not allowed to expand its system for service to its customers.

The City responds that (1) ATS has been given no public utility authority from the Illinois Commerce Commission, denies that it is a public utility and ATS is not a telephone company within the meaning of the Telephone Act; (2) the Telephone Act does not override the power of municipalities to control private use of the public ways or permit the use of a ten-day notice; (3) ATS is precluded under the doctrine of *res judicata* by a judgment against its predecessor in interest, Western Union, from contesting the City's right to exclude ATS from the public way; and (4) ATS is a trespasser and the City would be irreparably harmed if ATS is allowed to continue installing unauthorized cable under the City streets.

The City seeks to maintain the status quo pending a determination of this lawsuit. The City does not seek to prevent ATS from entering the public way solely for the purpose of maintaining or repairing its existing fiber optic system.

## II.

### *Findings of Fact*

Based on the facts admitted in the pleadings and the evidence submitted at a hearing, the court finds the facts to be as follows:

1. Plaintiff Diginet is a Nevada corporation with its principal place of business in Milwaukee, Wisconsin. Cross-claimant City of Chicago is an Illinois municipal corporation. Defendant and cross-defendant ATS is a Delaware corporation with its principal place of business in Richardson, Texas. The amount in controversy exceeds $50,000. The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

2. ATS owns and operates a network of fiber optic cables within the City. ATS has not obtained any specific permission or authority from the City to install fiber optic cables in the public way. The fiber optic cables were installed by Western Union.

3. ATS uses its fiber optic network to provide telecommunications services to selected customers for a fee. The rates of the services provided by ATS are not regulated. ATS leases its fiber optic cables, or transmission capacity in its fiber optic cables, for use by its customers, such as Diginet, to directly transmit calls to long distance telecommunications carriers without using the local exchange services provided by the regulated local exchange carrier.

4. Western Union did not seek permission or authority from the City prior to installing fiber optic cables. However, Western Union had authority to operate a telegraph system under the City streets pursuant to non-assignable rights granted by the Chicago Municipal Code to telegraph companies. Western Union operated the fiber optic system as a part of its Advance Transmission Division telecommunications business.

5. In 1986, the City notified Western Union that it could not maintain fiber optic cables in the public way for telecommunications without City Council approval. Thereafter, the City and Western Union entered into negotiations, which continued for two years without producing an agreement. In late 1988, Western Union filed suit against the City in the Circuit Court of Cook County, Chancery Division. Western Union claimed that the City had no authority to require compensation for the construction and operation of its fiber optic network in the public way. Western Union sought to enjoin the City from interfering with the construction and operation of its fiber optic cable system. This case was entitled *Western Union Corp. v. Parrish & the City of Chicago*, No. 88 CH 9963.

6. The Second Amended Complaint filed by Western Union in the *Parrish* case for injunctive relief and damages is based upon rights Western Union claimed by virtue of the "Illinois Telephone and Telegraph Act. Ill.Rev.Stat. (1985) ch. 1[3]4, and Chapter 189 of the Municipal Code of the City of Chicago" (¶ 11). Western Union described itself as in the telecommunications business by virtue of rights originally granted to it

under state statutes and the Municipal Code to telegraph companies. Western Union described the dispute between itself and the City as relating to its right to install fiber optic cables without specific permission from the City and as a dispute with the City about the level of any regulatory fee. Although Western Union did not describe itself as a telephone company, it relied upon state statutory provisions, including those cited by ATS, and specifically cited in its complaint *AT & T v. Village of Arlington Heights*, 174 Ill.App.3d 381, 124 Ill.Dec. 109, 528 N.E.2d 1000 (1st Dist. 1988), (a case strongly relied on by ATS) for the proposition that the home rule powers of a municipality are not unlimited.

7. A six-day bench trial was conducted before the Circuit Court in early 1990. After the trial and post-trial briefing were completed, but before the court rendered a decision, Western Union moved to voluntarily dismiss its Second Amended Complaint on the ground that it had sold its fiber optic network to ATS, and that the litigation was thus rendered moot.

8. The City opposed Western Union's motion to dismiss. The City argued that the case was not mooted by the transfer of the fiber optic network and moved to substitute ATS as Western Union's successor in interest and assignee. Western Union's motion to voluntarily dismiss and the City's motion to substitute ATS were heard on September 10, 1990. Attorneys for ATS were present at the September 10 hearing. ATS would not agree to be substituted as a party for Western Union. On September 14, 1990, the motion to add or substitute ATS was denied. The temporary restraining order entered against the City on December 15, 1988 was dissolved, and the City was given leave to file a petition seeking damages as a result of the entry of the temporary restraining order. Western Union's motion for voluntary dismissal was granted; the dismissal, however, was with prejudice. On September 14, 1990, the Circuit Court entered an order stating "Western Union's Second Amended Complaint for an Injunction is dismissed with prejudice."

9. ATS was originally incorporated in Delaware under the name MCI Private Systems, Inc. On February 20, 1990, its name was changed to Western Union ATS, Inc. The language in ATS's articles of incorporation on which it relies to establish its authority as a telephone company within the meaning of the Illinois Telephone Act of 1903 is as follows:

3. The nature of the business and of the purposes to be conducted and promoted by the corporation shall be to conduct any lawful business, to promote any lawful purpose, and to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware, including, without limiting the generality of the foregoing, the following businesses, purposes, acts and activities:

(a) to acquire by purchase, exchange, lease or otherwise, and to own, hold, use, develop, operate, sell, assign, lease, transfer, convey, exchange, mortgage, pledge or otherwise dispose of, and otherwise to trade and deal in and with, real and personal property of every class or description, and rights and privileges therein, wheresoever situated.

The foregoing shall be construed as powers as well as objects and purposes, and shall be regarded as independent objects, purposes and powers; and the enumeration of specific object, purposes and powers shall not be construed to limit or restrict in any manner the meaning of the general terms or the general objects, purposes and powers of the corporation nor shall the expression of one thing be deemed to exclude another not expressed, although it be of like nature. On September 11, 1990, ATS registered with the Illinois Secretary of State as a foreign corporation intending to do business in Illinois. It described the purposes of its business as "telecommunications."

10. On February 23, 1990, Western Union and ATS entered into an Agreement of Purchase and Sale of Assets ("Purchase Agreement"). Under the terms of the Pur-

chase Agreement, ATS ("Purchaser") agreed to purchase all of Western Union's ("Seller") assets "used predominantly in connection with the operation of Seller's Advanced Transmission Systems Division ('ATS')." ATS acquired its fiber optic network from Western Union as an assignee in March 1990. ATS agreed to assume "all liabilities and obligations arising out of Seller's Assets or the use, operation or ownership thereof or the performance by Purchaser of the obligations assumed hereby from and after the Closing Date." The assets purchased by ATS specifically included "[a]ll right, title and interest of Seller in ordinances, licenses and other interests and agreements through which Seller has or claims the right to install, operate, maintain, repair and replace conduit and other types of carrier pipes ... within property owned by municipalities, cities or other governmental jurisdictions, including ... City of Chicago, Illinois." Western Union represented and warranted that "[a]t the Closing Date, none of Seller's Assets will be subject to any ... restriction, lease, license, easement, liability or adverse claim of any nature whatsoever, direct or indirect, whether accrued, absolute, contingent or otherwise, except (i) as identified in Schedule M...." Schedule M included "any law, ordinance or governmental regulation restricting or regulating or prohibiting the occupancy, use or enjoyment of Seller's Assets or ... public ways ... adjoining or appurtenant to Seller's Assets or regulating the character, dimensions or location of any improvement now or hereafter erected on Seller's Assets ... or the effect of any violation of any such law, ordinance, statute or governmental regulation."

11. Western Union represented and warranted that it was in compliance with "any existing laws, rules, regulations, ordinances, orders, judgments, decrees, agreements and other undertakings applicable to the ownership, use and operation of the Assets and the conduct of the business of ATS." Specifically excluded from this compliance was the dispute with the City of Chicago. "The City has asserted that Seller's installation and operation of fiber optic cables in Seller's conduits in the public rights of way is not authorized by Chapter 189 of the Municipal Code of the City of Chicago, which governs the use of the public ways by telegraph companies, and that Seller owes the City fees for the use of the public ways." Schedule N also includes a description of the progress and status of Western Union's litigation with the City of Chicago up through the completion of trial. ATS agreed to "take such steps as shall be necessary to effect a release to Seller of the Performance Bond Collateral and Purchaser shall make such arrangements as are required to continue such performance and surety bonds in full force and effect or to arrange for substitutions therefor." One such Cash Deposit Outstanding was the $125,000 held by the "Circuit Court of Cook County, IL (in connection with *Western Union Corporation v. Parrish and the City of Chicago*), Case No. 88 CH 9963."

12. On December 19, 1990, ATS stated in a letter to the City that it was authorized to occupy the public way without the permission of the City. ATS stated that it is a telephone company within the meaning of the Telephone Act because it has "power under its charter to construct or operate telephone lines or exchanges within the state." ATS stated that an August 20, 1990 letter constituted a ten-day notice under the Telephone Act and that "the failure of the City to specify reasonable time, place and manner specifications for the installation allows Western Union ATS, pursuant to the statue, to now proceed to place and erect" its fiber optic lines in the public ways. On January 8, 1991, ATS submitted to the City's Department of Public Works applications for permits to install additional fiber optic cable in the public way. The applications seek permits to "install fiber optic cable as required." By letter dated January 10, 1991, ATS stated that it considered the permit applications to be "filed and remain pending." ATS also stated that "[p]ursuant to the Illinois Telephone Act, the City of Chicago has ten days, or until January 18, 1991, to respond to the permit application."

13. Many parts of the City of Chicago contain underground tunnels which contain sewer, water, electric, gas, telephone and telegraph mains. The tunnels may only be entered upon obtaining a permit from the City and providing also that notice is given to other agencies and companies having facilities present in the area of entry. Under the City's procedure, permits for work to be done under the public ways are issued upon condition that the permit holder must notify, forty-eight hours prior to starting work, the Chicago Utilities Alert Network ("CUAN") of the location, nature and starting date of the planned work. It appears that ATS is now a member of CUAN.

14. A witness for ATS testified that restraining the expansion of its present system would cause it to lose revenues in an unspecified amount and that it would lose unspecified customer good will. According to ATS, these customers would have to turn to the Bell System or to other telecommunications systems for service at a higher cost for the transmissions of messages and data. ATS could only avoid this loss if it agreed to the terms of a City ordinance granting it permission to utilize the public way.

15. A number of fiber optic telecommunication companies have applied to the City for access to the underground tunnel system. The City has a plan governing the use of these public ways by fiber optic companies. All potential users are treated on an equal basis. The major terms are: A fifteen year term; no right to transfer ownership of cables without prior City approval; cables shall be installed in conformance with applicable safety and construction standards; City has right to make on-site inspections; compensation is based on the greater of a percentage of gross billings or a fee per lineal foot to cable authorized to be installed; two cables pairs shall be reserved for City use; a most favored vendee status guarantees the vendee the right to obtain the same terms offered to other vendees; records to be maintained and available for City audit; the vendee shall hold the City harmless and provide five million dollars in insurance coverage; surety bond required; company shall maintain public ways free of hazards; right of termination. Agreements have been reached with Chicago Fiber Optic Company and Lightnet Company, and ordinances were passed by the City council giving effect to those agreements.

## III.

### CONCLUSIONS OF LAW

#### (1) Standards For Relief

■ To obtain a preliminary injunction the City must show that: (1) it has some likelihood of success on the merits, (2) it will suffer irreparable harm if relief is not granted, and (3) it has no adequate remedy at law. *Ping v. National Educ. Ass'n,* 870 F.2d 1369, 1371–72 (7th Cir.1989). Once the City meets this threshold burden, the court must undertake a "sliding scale" analysis of "the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits." The more the moving party is likely to prevail on the merits, the less heavily the balance of harms must weigh in its favor. *Id.*

#### (2) Authority of the City

Section 10–28–010 of the Municipal Code of Chicago (1990 rev.) provides:

No person shall ... install or maintain any wire, pipe or conduit underneath the surface of any public way or other public place without first having obtained specific authority by ordinance passed by the City Council authorizing such privilege.

The dispute in this litigation has to do with whether or not the City may enforce this ordinance with respect to ATS.

■ The City may legally refuse private parties the right to occupy the public way. *Olsen v. City of Chicago,* 25 Ill.2d 292, 184 N.E.2d 879, 880 (1962) ("the power of a municipality to regulate or prohibit the use of the streets for private gain is established"); *City of Decatur v. Chasteen,* 19 Ill.2d 204, 166 N.E.2d 29, 33 (1960) ("no one has any inherent right to use the streets or highways for business purposes"); *People*

*ex rel. Herman Armanetti, Inc. v. City of Chicago,* 415 Ill. 165, 112 N.E.2d 616 (1953). The power of a city to expel a regulated public utility from the streets after expiration of its franchise cannot be overridden by a certificate of public convenience and a necessity from a utility regulatory commission. *City of Geneseo v. Illinois N. Utilities,* 378 Ill. 506, 39 N.E.2d 26, 37 (1941), *cert. denied,* 316 U.S. 670, 62 S.Ct. 1046, 86 L.Ed. 1746 (1942). The City contends that under its ordinance, ATS is a trespasser and that, as such, under Illinois law it has an automatic right to an injunction. *Okaw Drainage Dist. v. National Distillers & Chem. Corp.,* 882 F.2d 1241, 1246 (7th Cir.1989).

### (3) Application of the Telephone Act to ATS

■■■ ATS contends that it is a telephone company within the meaning of the Telephone Act of 1903, Ill.Rev.Stat. ch. 134, §§ 17–20. That act, which was adopted before public utility regulation was introduced in Illinois to provide eminent domain powers for the installation of telephone facilities, applies to a corporation having power either "under its charter, or under any special or general law of the State of Illinois to construct or operate telephone lines or exchanges in or through Illinois." *Id.* § 17. A telephone company can, by a profession of public service in its articles of incorporation or by obtaining a certificate of conveyance and necessity, avail itself of the right to exercise the power of eminent domain. Assuming without deciding that there is no difference between a telephone company and a telecommunication company, the language in ATS's articles of incorporation does not indicate that it is a telephone or a telecommunications company. ATS argues, however, that any general authority to engage in business is sufficient to allow it to come within the statutory language. That cannot be correct. The legislature did not intend to confer the power of eminent domain on any business

corporation that might choose at some point to provide private telephone service under its general charter. What distinguishes a public utility corporation from any other business corporation is a dedication of its property or plant to providing a utility service to the public on non-discriminatory terms in its territory of service. *Palmyra Tel. v. Modesto Tel.,* 336 Ill. 158, 164, 167 N.E. 860 (1929); *Austin Bros. Transfer v. Bloom,* 316 Ill. 435, 147 N.E. 387 (1925); *I.L.P. Public Utilities* §§ 3, 4.

In 1903, before utility regulation began in Illinois, a profession of public service could be established by a corporation's charter or articles of incorporation. With the advent of utility regulation, the more conventional proof of such a profession of public service is established by obtaining a certificate of public convenience and necessity from a utility regulatory commission. *See* Universal Telephone Service Protection Law of 1985. Ill.Rev.Stat. ch. 111⅔, ¶ 13–100. ATS, however, denies that it is subject to state or federal regulatory jurisdiction [1] and also denies that it is a public utility. It serves only customers of its choosing by entering into individual contracts of service. Accordingly, it is not entitled, either by its articles of incorporation or by any other recognition of public utility service, to utilize City streets by exercise of the power of eminent domain.

### (4) Application of the Ten–Day Notice Provision to the City

■ Even if ATS were entitled to rely on the Telephone Act of 1903, it does not appear that it could gain entry to the City streets by the issuance of a ten-day notice to the City as it has sought to do. The provision of the 1903 Act, as amended, on which it relies is as follows:

> Every such [telephone] company may, when it shall be necessary for the construction, maintenance, alteration or extension of its telephone system, or any part thereof, enter upon, take or damage

1. ATS describes itself as an intermediary supplier of telecommunications facilities to other telecommunication companies. It takes the position that because it does not deal with an end user of telecommunication messages it is not subject to regulatory jurisdiction. The accuracy of this position need not be resolved for the purpose of ruling on this motion.

private property in the manner provided for in, and the compensation therefor shall be ascertained and made in conformity to the provisions of "An Act to revise the law in relation to telegraph companies," approved March 24, 1874, and every such company is authorized to construct, maintain, alter and extend its poles, wires, cables and other appliances as a proper use of highways, along, upon, under and across any highway, street, alley, water or public ground in this state, but so as not to incommode the public in the use thereof: Provided that nothing in this Act shall interfere with the control now vested in cities, incorporated towns and villages in relation to the regulation of the poles, wires, cables and other appliances, and provided, that before any such lines shall be constructed along any such highway it shall be the duty of the telephone company proposing to construct any such line, to give to the highway commissioners having jurisdiction and control over the road or part thereof along and over which such line is proposed to be constructed, notice in writing of the purpose and intention of said company to construct said line over and along said road or highway, which said notice shall be serviced at least ten days before said line shall be placed or constructed over and along said highway; and upon the giving of said notice it shall be the duty of said highway commissioners to specify the portion of the road or highway upon which said line may be placed and constructed, and it shall thereupon be the duty of the said company to construct its said line in accordance with said specifications; but in the event that the said highway commissioners shall, for any reason, fail to make such specification within ten days after the service of such notice then the said company, without such specification having been made, may proceed to place and erect its said line along said highway by placing its posts, poles and abutments so as not to interfere with other proper uses of said road or highway. The telephone company proposing to construct any such line

shall comply with the provisions of Section 9–113 of the "Illinois Highway Code," as the same may from time to time be amended. Provided, that such telephone companies shall not have the right to condemn any portion of the right of way of any railroad company except as much thereof as is necessary to cross the same.

Ill.Rev.Stat. ch. 134, ¶ 20, § 4.

ATS contends that the cited statute authorizes it to give a ten-day notice to the City of its intention to enter tunnels under the streets of the City to extend its fiber optic cables. A plain reading of the Telephone Act reveals that the notice provision of the Act applies only to highways outside of unincorporated areas controlled by highway commissioners. The provision clearly states that nothing in the Act was intended to interfere with control vested "in cities" in relation to the regulations of poles, wires, cables, and other appliances. The Act also refers to the 1874 Act with respect to telegraph companies. That earlier Act required the written consent of "the corporate authorities of such city" (Ill.Rev.Stat. ch. 134 ¶ 4 (1989)) for entry upon a city street.

A construction of the Act which precludes a telephone company from acting after giving a city a ten-day notice was stated by the Illinois Supreme Court shortly after the Act was adopted. *People v. Central Union Tel.*, 232 Ill. 260, 83 N.E. 829, 833 (1908). With reference to this section the court stated:

... That act, however, gives no authority to a telephone corporation to set poles or string wires in the street of any incorporated city, town, or village without the consent of the corporate authorities. The act is designed to extend the charter powers of telephone companies by investing them with the power of eminent domain, and to declare that the construction and maintenance of telephone lines is a proper use of a highway, and to authorize the construction and maintenance of telephone lines along, upon, under, and across any highway, street, alley water, or public ground, provided the

public are not incommoded. The act, however, expressly provides that nothing contained in it shall interfere with the control vested in cities, incorporated towns, and villages in relation to the regulation of poles, wires, cables, and other appliances. That control is not limited to prescribing the location and size of the poles and such matters, but extends to the whole subject. There is no provision for giving notice to the city of the intention to construct a line, with the privilege of the city of specifying the portion of the street on which the line shall be placed, as there is in the case of highway commissioners. The whole matter of control by municipalities remains where it was before the Act was passed.

*Id.*, 83 N.E. at 833.

■ Although the language of the statute as construed by the Illinois Supreme Court appears decisive, ATS cites the decision of the Illinois Appellate Court in the case of *AT & T v. Village of Arlington Heights*, 174 Ill.App.3d 381, 124 Ill.Dec. 109, 528 N.E.2d 1000 (1st Dist.1988), *appeal denied*, 123 Ill.2d 555, 128 Ill.Dec. 887, 535 N.E.2d 398 (1988), as a later contrary authority supporting the use of a ten-day notice as a means of gaining access to a City street by a telephone company. In *AT & T* it was conceded that the plaintiff was a telephone company holding a certificate of conveyance and necessity from the Illinois Commerce Commission. Arlington Heights was enjoined from preventing AT & T from using 1200 feet of its public way to effect an 85 mile fiber optic linkage. There is language in the *AT & T* opinion that is contrary to the Illinois Supreme Court's construction of the Act in *Central Union Telephone*. However, to the extent that a holding of the Appellate Court conflicts with an opinion of the Illinois Supreme Court, it is the duty of a federal district court to follow the opinion of the Supreme

Court of Illinois.[2] *See West v. American Tel. & Tel.*, 311 U.S. 223, 237–38, 61 S.Ct. 179, 183–84, 85 L.Ed. 139 (1940); *First Comics, Inc. v. World Color Press, Inc.*, 884 F.2d 1033, 1038 (7th Cir.1989). Therefore, it is concluded that ATS may not serve an effective ten-day notice upon the City and thereby enter the underground systems for the purpose of extending its cables without City permission.

### (5) Res Judicata Effect of the Parrish Litigation

■ The City contends that the dismissal of the Western Union claim with prejudice in the *Parrish* case is *res judicata* in this case. It asserts that the rights here at issue were the subject of previous litigation between the City and ATS's predecessor, Western Union. It states that Western Union, like ATS, claimed that the City could not prevent it from freely operating a telecommunications business by utilizing and extending its fiber optic cables under the streets. Before that litigation was decided Western Union sold its system to ATS and moved to dismiss the *Parrish* case as moot. The Circuit Court denied this motion, but granted a motion for a voluntary dismissal with prejudice.

■ A federal court must give a state court judgment the same effect it would be given in the court that rendered it. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380–81, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1984); 28 U.S.C. § 1738; *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir.1987); *Lee v. City of Peoria*, 685 F.2d 196 (7th Cir.1982). Under Illinois law, "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same

---

**2.** The Seventh Circuit has rejected *Central Union Telephone* as an Illinois authority for contract interpretation. Nevertheless, the 1908 case is a definitive interpretation of the section of the 1903 Illinois Telephone Act under considera-

tion. It is cited here for its still binding construction of the 1903 Act. *See Sahadi v. Continental Illinois Nat'l Bank & Trust*, 706 F.2d 193, 198 n. 2 (7th Cir.1983) (*Central Union Telephone*

claim, demand, or cause of action." [3] *Housing Auth. v. YMCA of Ottawa,* 101 Ill.2d 246, 78 Ill.Dec. 125, 127–28, 461 N.E.2d 959, 961–62 (1984) (*quoting People v. Kidd,* 398 Ill. 405, 408, 75 N.E.2d 851 (1947)). Claims that could have been raised are barred as well as claims that actually were litigated. *American Nat'l Bank & Trust v. City of Chicago,* 826 F.2d 1547 (7th Cir.1987). A "dismissal with prejudice is deemed to be as conclusive of the rights of the parties as if the matter had proceeded to trial and had been resolved by final judgment adverse to the plaintiff." *Morris v. Union Oil of California,* 96 Ill.App.3d 148, 51 Ill.Dec. 770, 776, 421 N.E.2d 278, 284 (5th Dist.1981).

■ ATS states that it is not in privity with Western Union because it only bought an asset. However, ATS purchased all of Western Union's Advanced Transmission Systems Division including its interests in maintaining conduit on City property. ATS assumed all liabilities and obligations arising out of the assets. The City's ordinances regulating the public way were expressly listed as potential liabilities accompanying the assets. ATS agreed to assume and continue the bond Western Union had deposited with the Circuit Court. ATS is clearly in privity with Western Union, and it had actual knowledge of the posture of the suit when it purchased the system from Western Union. Privity is established because ATS bought the property rights from a party to the suit after the suit was initiated. *MPL, Inc. v. Cook,* 90 F.R.D. 570, 572 (N.D.Ill.1981); *Bonanno v. La Salle & Bureau County R.R.,* 87 Ill.App.3d 988, 42 Ill.Dec. 866, 870, 409 N.E.2d 481, 485 (3rd Dist.1980); *Country Mut. Ins. v. Regent Homes, Corp.,* 64 Ill.App.3d 666, 20 Ill.Dec. 538, 380 N.E.2d 516 (5th Dist.1978).

■ Contrary to ATS's assertion, neither the parties nor the causes need be identical, but are required only to be substantially similar. *Aetna Casualty & Sur. v. Kerr–McGee Chem. Corp.,* 875 F.2d 1252, 1256 (7th Cir.1989). Claims are considered to be the same when arising out of a common nucleus of operating facts. *American Nat'l Bank & Trust v. City of Chicago,* 826 F.2d 1547, 1551 (7th Cir.1987). Western Union and ATS possess substantially similar interests with respect to the *Parrish* case: Both claim the right to install and maintain a fiber optics network without authorization from the City.

■ The doctrine of *res judicata* does not require that the "precise question" have been previously litigated between the parties. Therefore ATS's purported allegation of a new legal theory—the Telephone Act [4]—cannot escape the bar of *res judicata. American National Bank,* 826 F.2d at 1553. *Res judicata* bars ATS from relitigating the City's right to prevent its entry into the streets without its permission even if the Telephone Act was not raised as authority for relief. *Hagee v. City of Evanston,* 729 F.2d 510, 514 (7th Cir.1984).

ATS has asserted defenses arising out of the same operative facts as those previously asserted by its predecessor in interest with whom it is in privity. Those claims were resolved against Western Union, and ATS is now barred by *res judicata* from asserting that the City is without power to prohibit ATS from using the public way without obtaining the City's permission.

■ ATS contends that the City is "judicially estopped" from arguing the *res judicata* effect of the *Parrish* order because it told the trial judge that it was not then seeking an injunction against ATS (when

---

was "decided in the salad days of American legal formalism.").

**3.** Illinois courts apply either a "transactional test" or a "same evidence" test to determine whether a judgment involves the same claim or cause of action. *Rockford Mut. Ins. v. Amerisure Ins.,* 925 F.2d 193, 197 (7th Cir.1991).

**4.** However, paragraphs 4 and 76 of the Second Amended Complaint in the *Parrish* case may

indicate that Western Union also relied upon the Telephone Act as construed by the Illinois Appellate Court in *AT & T v. Village of Arlington Heights,* 174 Ill.App.3d 381, 124 Ill.Dec. 109, 528 N.E.2d 1000 (1st Dist.1988). Moreover, if the operation of the same telecommunications system confers rights on ATS as a telephone company, those same rights extended to Western Union when it operated the system.

Western Union moved to dismiss its case). At that time, in September, 1990, the City was negotiating with ATS. The City's motion to substitute ATS was denied. At no time did the City ever concede that Western Union or ATS was entitled to access to the public way without its permission. The City is not estopped from arguing the *res judicata* effect of the prior litigation.

### (6) Harm to the Parties

The City faces the loss of control of the public ways if ATS makes unauthorized entries into the tunnel system. The nature of the system under the public streets is such as to pose danger to the public and other utilities if entry is made without standards. No adequate remedy at law exists for the kind of public injury which could occur from an uncontrolled use of the tunnel system.

The Illinois Underground Utility Facilities Damage Prevention Act, relied upon by ATS as a basis for arguing that regulatory control is in the state and not in the City, expressly allows the City's operation of the Chicago Utilities Alert Network, because the City has a population over one million. Ill.Rev.Stat. ch. 111⅔ ¶ 1603, § 3 (supp. 1990). The City's important role in the activity of controlling this system would be undermined by the action ATS seeks to take. The public interest militates strongly in favor of upholding the power of the City to control access to the City's underground tunnels.

ATS contends, without any specific showing, that it will lose customers, business and market share if it is not permitted to expand its system. Its presentation is far from specific as to how or why it needs to expand its system. However, since at least March of 1990, ATS has been aware of the problem of its authority. Moreover, the type of harm it claims is ascertainable as money damages. No specific evidence was presented to show otherwise.

Because the City is so much more likely to win on the merits of this case than ATS, only a slight showing that the balance of harms weighs in its favor is necessary. *Ping v. National Educ. Ass'n*, 870 F.2d 1369, 1371–72 (7th Cir.1989); *Desert Partners, L.P. v. USG Corp.*, 686 F.Supp. 1289, 1293–94 (N.D.Ill.1988). Without regard to the merits, however, the balance of harms weighs strongly in favor of granting the City's motion to enjoin further expansion and to maintain the status quo.

### (7) Bond

Neither the City nor ATS discussed the question, or the amount, of a bond in their original submissions to the court. At the conclusion of the hearing, each party was directed to submit a memorandum on the subject within five days.

Rule 65(c) requires that a bond be posted in support of an injunction. The City asked that a bond or security be waived because of its ability to satisfy judgments of this court. *Dillon v. City of Chicago*, 866 F.2d 902, 905 (7th Cir.1988); *Wayne Chem., Inc. v. Columbus Agency Serv. Corp.*, 567 F.2d 692, 701 (7th Cir.1977). Since neither party addressed the topic of the amount of a bond, only such amount as will secure the payment of costs and nominal damages should be required.

IT IS THEREFORE ORDERED as follows:

(1) The Clerk of the Court is directed to issue an injunction preliminarily restraining, until further order of the court, Western Union ATS, Inc., its officers, employees, and agents from entering in, upon or under the streets of the City of Chicago for the purpose of adding to or expanding its fiber optic cable system in any manner without the express permission of the City of Chicago, provided, however, that the City shall not, during the pendency of this preliminary injunction, withhold reasonable access to the City's street tunnel system to Western Union ATS, Inc. for the purpose of repairing or maintaining its presently existing fiber optic cable system.

(2) This preliminary injunction shall be effective upon the posting by the City of its bond in the penal sum of $5,000 to protect Western Union ATS, Inc. from damages should it be determined that a preliminary

injunction was wrongfully issued. Surety and security for the City is hereby waived.

(3) This case is set for a hearing on status on March 13, 1991 at 9:15 a.m.